778 P.2d 778

**Clinton Evan MINER and Juliann Bakes Miner, husband and wife, Plaintiffs–Respondents,**

**v.**

**FARMERS INSURANCE COMPANY OF IDAHO, Defendant–Appellant.**

**No. 17636.**

Supreme Court of Idaho.

Aug. 9, 1989.

Cantrill, Skinner, Sullivan & King, of Boise, for defendant-appellant. Robert D. Lewis argued.

Roy & Nielson, of Twin Falls, for plaintiffs-respondents. Susan P. Roy argued.

JOHNSON, Justice.

This is an insurance subrogation case. The question presented is whether an insurer is obligated for attorney fees incurred by its insureds in collecting an amount to which the insurer was subrogated, when the insureds did not notify the insurer that they had employed an attorney to collect the subrogated interest. We hold that the insureds are not entitled to withhold attorney fees from the subrogated interest. We reverse a summary judgment in favor of the insureds and remand to the trial court with instructions to grant summary judgment to the insurer.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

The Miners were insured by Farmers when they were injured in an automobile accident on October 25, 1986. The driver of the other automobile was insured by State Farm. Farmers paid $4,773.17 on behalf of the Miners for medical care and treatment they received as a result of the accident.

In January 1987 Farmers notified State Farm that Farmers had a medical payment subrogation interest in any payments State Farm might make to settle injury claims

arising out of the accident. In May 1987 Farmers advised State Farm that its claim for pending medicals was $2,170.00. In June 1987 Farmers advised State Farm that its claim had increased to $2,814.00 and then to $3,780.14. On August 10, 1987, Farmers advised State Farm that its claim had increased to $4,773.17.

On July 27, 1987, the Miners employed an attorney to recover from the driver of the other automobile the damages they had sustained in the accident. The employment contract entered into between the Miners and their attorney provided that the attorney would receive one-third of all amounts recovered for the Miners as a result of damages sustained in the accident. Neither the Miners nor their attorney advised Farmers of this employment or that the Miners intended to collect the subrogated interest of Farmers. On August 14, 1987, the attorney for the Miners negotiated a settlement with State Farm. The settlement included $10,000.00 compensatory damages and $4,773.17 for medical expenses previously paid by Farmers. Two checks were issued by State Farm, one for $10,000.00, payable to the Miners and the attorney, and a second for $4,773.17, payable to the Miners and Farmers.

The Miners asserted that Farmers was entitled to receive the amount of the second check, less one-third of that amount, in order to compensate them for the attorney fees they had agreed to pay their attorney. Farmers disagreed.

The Miners brought this action against Farmers seeking a declaratory judgment that they were entitled to withhold one-third of the $4,773.17 represented by the second check as attorney fees for obtaining settlement with State Farm. Farmers denied that it owed these attorney fees. The Miners moved for summary judgment, which the trial court granted based on *Cedarholm v. State Farm Mutual Insurance Co.*, 81 Idaho 136, 338 P.2d 93 (1959). Farmers has appealed this summary judgment and has asserted that summary judgment should have been granted to Farmers.

## II.

## THE MINERS WERE NOT ENTITLED TO WITHHOLD ATTORNEY FEES FROM THE SUBROGATED INTEREST OF FARMERS.

The facts in *Cedarholm* were somewhat similar to the facts in this case. There, an insurer had paid its insureds for damage to their automobile resulting from an accident caused by another driver. The insureds brought action against the driver of the other automobile seeking recovery for the damage to their car and for damages for personal injuries. While the attorney for the insureds was negotiating a settlement of these claims, he called an agent for the insurer and inquired whether the insurer intended to claim subrogation in the action against the other driver. "The agent replied insofar as he knew his company did not plan to do so." *Id.* at 139, 338 P.2d at 94. A settlement was reached by the attorney, and two checks were issued, one for the personal injuries, payable to the insureds and their attorney, and a second for the damage to the automobile, payable to the insureds, their attorney and the insurer.

In deciding whether the insureds were entitled to deduct attorney fees from the second check, this Court adopted the fund doctrine and said:

> Recovery by the [insurer] under its right of subrogation ... is subject to reduction by the amount [the insureds] expended for collection.
>
>> "The general rule is that the insured may retain out of the fund recovered from the wrongdoer, after the payment of the policy, the costs and reasonable expenses incurred in the litigation, for it would be unjust to require him to incur expenses for the recovery of money for the benefit of the insurer, without being allowed to reimburse himself. * * *" 29 Am.Jur., Insurance, sec. 1346, p. 1008.
>
> [Citation omitted.] There was an express subrogation contract between the parties. Under this express agreement, the [insurer] required [the insureds] to

proceed by its inaction and was obligated to pay the necessary expenses which [the insureds] incurred to protect [the insurer] under ... the agreement, and this would therefore harmonize the conclusion reached herein with *Felton v. Finely,* 69 Idaho 381, 209 P.2d 899 [ (1949) ].

81 Idaho at 142, 338 P.2d at 96.

We first note that *Felton v. Finely,* cited in *Cedarholm,* held that an attorney who represented heirs who successfully challenged a will was not entitled to recover attorney fees from other heirs whom he did not represent. The attorney had made several efforts to induce these other heirs to employ him, but they had refused to do so. The Court concluded that there was neither an express nor an implied contract by these other heirs to pay for the services of the attorney. In *Cedarholm* the Court distinguished *Felton* on the ground that in *Cedarholm* there was an express subrogation contract that obligated the insureds to pursue their claims when the insurer did not do so.

We conclude that *Cedarholm* is distinguishable from this case. In *Cedarholm* the attorney for the insureds had contacted an agent for the insurer to inquire whether the insurer intended to claim subrogation. Here, there was no notice to Farmers by the Miners or their attorney that the Miners had employed the attorney to pursue their claims, including the subrogated interest of Farmers. Notice to an insurer is a necessary prerequisite in a case like this before the insured is entitled to charge the insurer for attorney fees for the recovery of the subrogated interest. The cases cited in support of the portion of the Am.Jur. article in *Cedarholm* confirm this.

In *Newcomb v. Cincinnati Insurance Co.,* 22 Ohio St. 382, 10 Am.Rep. 746 (1872) the court held that the insured was required to account only for "the surplus which may remain in his hands, after satisfying his own excess of loss in full and his reasonable expenses incurred in its recovery; unless the underwriter shall, *on notice and opportunity given,* have contributed to, and made common cause with him,

in the prosecution." 10 Am.Rep. at 750–51 (emphasis added).

In *Svea Assur. Co. v. Packham,* 92 Md. 464, 48 A. 359 (1901), the court allowed the insured to retain attorney fees out of the amount recovered that represented the subrogated interest of the insurers, because the insurers had been notified of the litigation and refused to participate. 48 A. at 361.

In *Shawnee Fire Ins. Co. v. Cosgrove,* 116 P. 819 (Kan.1911), the court pointed out that the insurer was notified that a settlement was being discussed.

Other more modern cases also indicate that notice to the insurer that the insured is pursuing an action or settlement that includes the subrogated interest is necessary before the insured may charge the insurer attorney fees for the collection of the subrogated interest. This principle was succinctly stated by the Wisconsin Supreme Court in *State Farm Mut. Auto. Ins. Co. v. Geline,* 48 Wis.2d 290, 179 N.W.2d 815, 821 (1970):

"FUND DOCTRINE."

Because the attorney may not receive payment from his client for that portion of a settlement payable to holders of subrogated or assigned rights and particularly in light of the otherwise unjust enrichment of the holders of those rights, we find the superior merit in the equity approach and accept the rationale of the "fund doctrine" cases.

The adoption of the "fund doctrine" is subject to the following limitations:

. . . .

NOTICE. It is a prerequisite to seeking or securing a fee from holders of subrogated interests that notice be given to such holders not only that a claim is being asserted or action has been commenced, but also that, unless the holder elects to join in the action as a party thereto, a reasonable fee for services rendered in accomplishing the collection of its subrogated interest will be requested of the court in any settlement or court disposition. Timely notice is required to give the holder of a subrogated interest the right to join the action and to be

represented by legal counsel of its own choosing if it so elects.

■ In this case there is no assertion by the Miners that either they or their attorney notified Farmers of their intent to collect the subrogated interest of Farmers from the driver of the other automobile involved in the accident. In the absence of this notice, the Miners are not entitled to withhold attorney fees from the subrogated interest of Farmers. Therefore, we reverse the summary judgment granted to the Miners.

### III.

### FARMERS IS ENTITLED TO SUMMARY JUDGMENT.

■ Where one party to an action has moved for summary judgment, summary judgment may be granted to a nonmoving party, if there are no genuine issues of material fact and if the nonmoving party is entitled to judgment as a matter of law. *Spencer–Steed v. Spencer*, 115 Idaho 338, 345, 766 P.2d 1219, 1226 (1988); *Juker v. American Livestock Ins. Co.*, 102 Idaho 644, 645, 637 P.2d 792, 793 (1981).

Here, since there was no assertion that the Miners or their attorney had notified Farmers of their intent to collect the subrogated interest of Farmers, there was no genuine issue of material fact and Farmers is entitled to summary judgment as a matter of law. Therefore, we remand this case to the trial court with instructions to grant summary judgment to Farmers.

### IV.

### CONCLUSION.

We reverse the summary judgment granted to the Miners and remand this case to the trial court with instructions to grant summary judgment to Farmers.

We award costs, but not attorney fees, on appeal to Farmers.

HUNTLEY, J.,* and McFADDEN, J., Pro Tem., concur.

* HUNTLEY, J., fully concurred prior to his resignation August 7, 1989.

SHEPARD, J., sat, but did not participate in the opinion due to his untimely death.

BISTLINE, Justice, dissenting.

### PART I PREFACE

Counsel involved will readily see that the validity of Justice Johnson's opinion hinges on the supposed distinction between *Cedarholm* and the instant case:

We conclude that *Cedarholm* is distinguishable from this case. In *Cedarholm* the attorney for the insureds had contacted an agent for the insurer to inquire whether the insurer intended to claim subrogation. Here, there was no notice to Farmers by the Miners or their attorney that the Miners had employed the attorney to pursue their claims, including the subrogated interest of Farmers. Notice to an insurer is a necessary prerequisite in a case like this before the insured is entitled to charge the insurer for attorney fees for the recovery of the subrogated interest. The cases cited in support of the portion of the Am. Jur. article in *Cedarholm* confirm this.

(116 Idaho at 658, 778 P.2d at 780.) That paragraph is the crux of his opinion, and because I find much wrong in that paragraph, and, because there is no discussion whatever—let alone analysis—of Judge Meehl's opinion, nor any assessment of error on his part, I must respectfully dissent.

Before turning to Judge Meehl's written decision, it is appropriate to note that about two years ago—in the era of Justice Donaldson's *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187, treatise on appellate review—this Court was very concerned with affording due deference to the decisions of the trial courts. Since that time, however, as may have been noted, questions from the bench have made inquiry as to "the rule of law" which counsel would have the Court pronounce, and/or, what is the question presented—or both. Today's opinion for the Court is an example of an opinion which produces a new rule of law in Idaho, entirely at odds with *Cedarholm*, and in doing so ignores a well-

reasoned district court judgment founded on giving *stare decisis* effect to *Cedarholm.* The opinion for the Court purports to distinguish *Cedarholm* but, in making the attempt, apparently finds it necessary to resurrect three rather ancient cases which all went uncited or even mentioned in *Cedarholm.* Seemingly these cases are utilized to give the appearance that this Court, differently constituted at the time of *Cedarholm,* had relied thereon. Not so. Those cases went unmentioned in *Cedarholm.* Nor should they have been cited. *Cedarholm* did cite to a 1959 Am.Jur. citation, it is true, and those cases are twice found in the footnotes to the cited section of Am. Jur. But, they are *not* cited for the proposition for which they are this day utilized, to wit, that "[t]he cases cited in the portion of the Am.Jur. article in *Cedarholm* confirm this." "This" goes undefined, but appears to bear reference to the phrase in the majority opinion which reads: "Notice to an insurer is a *necessary prerequisite* in a case like this before the insured is entitled to charge the insurer attorney fees for the recovery of the subrogated interest." (116 Idaho at 658, 778 P.2d at 780.) The holding of *Cedarholm* was diametrically opposite. There the court *held:* "Recovery by the respondent under its right of subrogation, however, *is subject to reduction by the amount appellants expended for collection.*" 81 Idaho at 142, 338 P.2d at 99. Amounts expended included attorney fees—just as in this case.

## PART II

The district court decision authored by Judge Meehl is sound. First, he had provided his readers with a succinct but sufficient statement of the underlying facts:

*FACTS.* On October 25, 1986, plaintiffs were injured in an auto accident, incurring medical bills totaling $4,773.17. Defendant has paid the $4,773.17 under a policy of insurance with plaintiffs. This was done on a piecemeal basis as the expenses were incurred.[1]

*ANALYSIS.* It should be noted that there is no dispute among the parties[2] that defendant has a subrogated interest in recovering payments it made on behalf of plaintiffs, the insureds. The sole issue for determination is whether plaintiffs are entitled to deduct attorney's fees of $1,577.72 from the $4,773.17 recovered from the third party (State Farm) for medical payments which defendant had already paid and had a subrogated interest.

Paragraph III of plaintiffs' amended complaint alleges, in part, 'said policy also provides that in the event of a recovery *by the insureds* from a third party that defendant Farmers has a subrogated interest in recovering the medical payments it has made on behalf of its insured.' [Emphasis added.] This allegation was admitted by defendant in its answer to the amended complaint. The policy thus contemplates that an insured may pursue an independent action against a third party to recover for damages which are also covered by the insurance contract between plaintiff and defendant.[3] This position is further supported by the notice of subrogation sent to State Farm by defendant on May 12,

1. Justice Johnson has taken pains to detail the dates and amounts relative to Farmer's notices to State Farm. I may be missing the significance in stating any more than the final total, which is all that Judge Meehl found necessary.

2. The present action is for a declaratory judgment as to the Miners' entitlement to one-third attorney's fees of the $4,773.17 check which is made out jointly to them and to Farmers.

3. Justice Johnson's opinion makes no mention of this facet of the insurance contract. Common sense suggests that there are multitudes of automobile accidents where the insurer elects to only protect itself only on its subrogation rights.

This is readily accomplished by notifying the liability carrier of the party at fault. There may be instances where the liability carrier does not respect another company's notice when put on notice and requests the protection of "our name on the check", but I have known of none. Here, the insurer, Farmers, was accorded that courtesy by State Farm Mutual, and was protected. State Farm Mutual, in adding Farmers name as an additional payee also placed the burden on the Miners of bringing the declaratory judgment so that they could comply with the fee arrangement made with their attorneys—an arrangement which no one has questioned.

1987. That notice states, in relevant part, 'this is to advise you that we have a medical payment subrogation interest in *any payments you may make to settle injury claims* arising out of this accident ... our name should appear on any draft made payable to our insured *in settlement of his car damage or medical expenses.*' [Emphasis added.]

The language quoted above clearly indicates that defendant contemplated plaintiffs might proceed with an independent action to recover damages from a third party.[4]

The fact that plaintiffs hired an attorney to assist in recovering damages is not unusual. If plaintiffs had sought recovery only for medical expenses incurred as a result of the accident, they would not have needed to hire an attorney as

defendant had already paid those expenses. It would have been defendant's right to pursue recovery of those medical payments under its subrogation rights. However, defendant would not pursue a claim for other compensatory damages suffered by plaintiffs and, in fact, would lack standing to assert such a claim.

In order to pursue an action for damages other than medical expenses, plaintiffs retained an attorney. A necessary adjunct to the claim for compensatory damages would be the claim for medical expenses. *Absent notice from defendant to plaintiffs* that it intended to pursue its subrogation rights independently, it is not unreasonable that the plaintiffs' attorney included all claims against the third party in negotiating a settlement.[5]

---

4. This conclusion is not only correct, but is inescapable. It is nothing but recognition that insurance carriers do take steps to protect their subrogation rights. The degree of the protection sought will often depend on the amount involved. When one sees, as all of us do, countless cases where the *medical* expenses are over $100,000 and upwards, one understands that the subrogation right is worth more effort than just putting the wrongdoer's liability carrier on notice that the subrogated carrier wants to be a named payee when the liability carrier begins issuing checks.

When sizeable amounts are involved, one can well believe that the insurer is keeping a close eye on the statute of limitations. In such cases the insurer will not be slow to seek out its insured or the insured's counsel. As may again be mentioned, *infra,* Justice Johnson has decried the Miner's failure to contact the carrier, but *makes no mention whatever of the carrier's failure to contact the Miners.* Mention might also be made again, *infra,* time permitting, that in view of the great and ever-expanding cost of litigation, the amount here involved is trifling. Farmers could have received its subrogation amounts—less costs of collecting—in which it played no part whatever—some long time ago. Yet it chose to refuse to pay that collection fee, notwithstanding that its options for a free or less expensive ride elsewhere weren't all that great. The record is devoid of any demand by Farmers that State Farm Mutual could and should be reimbursing Farmers as the notices were sent out. In short, Farmers reasonably could expect that its name would be on any State Farm Mutual checks paying medical bills, but it took no action whatever toward collecting reimbursement of the bills it had paid. Nor does it appear that it sought to have State Farm Mutual pay the medical bills in the first place.

5. This is the crux of Judge Meehl's decision. Even absent the reported *Cedarholm* case, Judge Meehl's analysis could stand alone. Most attorneys pursuing a tort claim will include special damages along with general damages whether it be looking toward settlement, or filing in court. It would seem that a plaintiff's insurers would complain if they were left out, and later found themselves in the difficult position of facing a *res adjudicata* plea in bar. This court in writing its *Cedarholm* opinion made reference to the then very recent Wyoming case of *Iowa National Mutual Insurance Company v. Huntley,* 78 Wyo. 380, 328 P.2d 569 (1958). In that automobile collision case, Mrs. Huntley was killed, Mr. Huntley was injured, and their vehicle damaged. Iowa National was carrier on the Huntley's vehicle collision, and it paid him $1425 for that loss. Huntley filed one suit for $20,000 damages occasioned by the loss of his wife and $1500 for vehicle damages. He filed a separate damage action for his own personal injuries. Both actions were later settled at the same time. The settlement resulted in a stipulation for entry of judgment in the first action for $2,000; thereafter a receipt for that amount and satisfaction of judgment was given. The insurer was left holding the bag and accordingly sued Mr. Huntley. The report of the case makes it exceedingly clear that the stipulated judgment did not include anything for the vehicle damages.

The Wyoming court applied the single wrong doctrine, "by the weight of authority recovery for both damages [to the car and for loss of spouse] must be obtained, if at all in one action ... and that the plaintiff [insurer, Iowa National] has now no cause of action against the tort feasor which caused the damage involved herein." 328 P.2d at 573. The Wyoming court cited a Minnesota case for the proposition that the wrongdoer may not be subjected to two actions

Idaho precedent is unclear on the particular issue before this court. In *Cedarholm v. State Farm Mutual Insurance Co.*, the Idaho Supreme Court said:

> Recovery by the respondent under its right of subrogation, however, is subject to reduction by the amount appellants expended for collection.

> "The general rule is that the insured may retain out of the fund recovered from the wrongdoer, after the payment of the policy, the costs and reasonable expenses incurred in the litigation, for it would be unjust to require him to incur expenses for the recovery of money for the benefit of the insurer, without being allowed to reimburse himself...." 29 Am. Jur., Insurance, sec. 1346 p. 1008.

> See also *Iowa National Mutual Insurance Co. v. Huntley, supra.*

There was an express subrogation contract between the parties. Under this express agreement, the respondent required appellant to proceed *by its inaction* [6] and was obligated to pay the necessary expenses which appellant in-

curred to protect respondent under paragraph 7 of the agreement, and this would therefore harmonize the conclusion reached herein with *Felton v. Finley*, 69 Idaho 381, 209 P.2d 899 [ (1949) ].[7]

*Cedarholm v. State Farm Mutual Insurance Co.*, 81 Idaho 136, 142, 338 P.2d 93, 99 (1959).

The decision in *Cedarholm* indicates that recovery of moneys by an insured, to which an insurance company has a subrogated right, is subject to reduction for expenses incurred by the insured in recovering the funds.

The facts of *Cedarholm*, however, are very similar to the present case. The defendant insurance company had notified the third party insurer of its right to subrogation. The defendant did not indicate to plaintiff that it was going to assert its right to subrogation independent of any claims asserted by the plaintiff. The court finds that the 'inaction' referred to by the Court in *Cedarholm* was *the failure of the defendant insurance company to inform the plaintiff*

---

on a single cause of action for injury to person and damage to property although the insurer is subrogated to the latter but not to the former element of the cause of action; that the insured, having undertaken the management of the entire case, was obligated to represent the insurer as trustee and to submit evidence as to the value of the automobile involved in that case. It was his burden to protect the interest of his cestui que trust.

The rule referred to was the general rule which was set forth by this Court in *Cedarholm*, as borrowed from American Jurisprudence, although in *Iowa National* it is attributed otherwise:

> It is said in Annotation, 36 A.L.R. 1267, 1270:
> The general rule is that the insured may retain out of the fund recovered from the wrongdoer, after the payment of the policy, the costs and reasonable expenses incurred in the litigation, for it would be unjust to require him to incur expenses for the recovery of money for the benefit of the insurer, without being allowed to reimburse himself.

**6.** This sentence would read more cogently were it rearranged to state that "... the respondent (insurer) by its inaction required appellant (insured) to proceed ..." The inaction was referencing to the insurer—not the insured.

**7.** Judge Meehl apparently felt obliged to distinguish it. Although this Court's opinion in *Cedarholm* mentioned *Felton v. Finley*, why it did so is a mystery. Many of us in the north Idaho bar were close observers of the *Felton v. Finley* case. That case bore no similarity to *Cedarholm*. As Judge Meehl pointed out, it was not an insurance case. It was a will contest; Henry Felton wanted to represent all of the heirs on a contingent fee basis—but there were some who were averse to litigation, and hence would not sign up. No insurance was involved; no insurance fund was involved. That case is best forgotten. *It is interesting only in that it was* decided twice—with opposite results. Justices Keeton, Porter, and Taylor did not sit. The first opinion was authored by Justice Givens and joined by two district judges. On rehearing the opinion was authored by Justice Holden with all three district judges concurring. The ultimate result was that the heirs who did not want Mr. Felton to represent him, but nevertheless accepted the fruits of his labor, were not required to compensate him. Unjust enrichment was not then in vogue other than in the mind of Justice Givens as set forth in his opinion.

*that it would pursue its subrogation claim itself.*[8] Absent such notice, the Court in *Cedarholm* applied the general rule that the insurance company's recovery under its right of subrogation was subject to reduction for the amounts expended by the insured in securing the recovery. This included attorney's fees. This Court finds application of the general rule stated above proper in the present case. It would be unjust for the defendant to benefit from the efforts of plaintiffs' attorney in securing a recovery of the medical expenses without sharing the costs of that recovery.

Defendant asserts that the law firm employed by plaintiffs performed no legal services in securing the $4,773.17 from State Farm Insurance Company. This assertion will not be considered by the court. The assertion is contained in the affidavit of Michael Duke in opposition to the motion for summary judgment. The assertion is preceded by the statement, 'the best knowledge of your affiant the law firm ... performed no legal services in securing the $4,773.17....' This is a statement not based on personal knowledge, but on information and belief and is to be disregarded. I.R.C.P. 56(e); *Tapper Chevrolet Co. v. Hansen,* 95 Idaho 436, 510 P.2d 1091 (1973).[9]

No issue of material fact has been raised by the pleadings or affidavits on file. Consistent with the discussion of *Cedarholm, ante,* it is the decision of this court that, as a matter of law, plaintiffs are entitled to attorney fees incurred in securing the $4,773.17 recovery from State Farm.

It is further this court's determination that plaintiffs are the prevailing party and are entitled to an award of attorney fees incurred in the present action. I.C. § 12–120(1).

This *court will not grant plaintiffs summary judgment on Count Two of the amended complaint.* The determination of whether defendant engaged in bad faith misconduct in refusing to execute the settlement check is clearly a factual question for determination at trial by the finder of fact.

Opinion of the trial court, R. at ——.

## PART III

The opinion authored for the Court by Justice Johnson is not supported by law.

In 116 Idaho at 658, 778 P.2d at 780, Justice Johnson opens the final paragraph by offering a distinction of this case from *Cedarholm,* of which he says "the attorney for the insureds had contacted an agent for the insurer to inquire whether the insurer intended to claim subrogation." What Justice Johnson makes of his own statement is unknown. He says no more than that. He leaves his reader to infer that the insurer, or its agent, or someone in authority responded on behalf of the insurer—which does not appear to be so.

What actually took place in *Cedarholm* was earlier set forth in Justice Johnson's opinion, 116 Idaho at 657, 778 P.2d at 779, namely that an insurance agent for the insurer[10] stated that *as far as he knew,* the insurer did not plan to push or pursue its subrogation rights which amounted to but $1249.50. The real issue in that case, not mentioned by Justice Johnson, was the insured's claim that the insurer had thereby *waived its*

**8.** This conclusion is not only reasonable, but inescapable. True enough, Farmers was notifying State Farm of the medical payments it was making. Although this would probably protect (and did), it would not collect.

**9.** Legal services does not necessarily entail court action. It can mean court action, but it also encompasses pursuing a settlement—which if for a fair amount, has always been considered a commendable aspect of the practice of law. Moreover, a firm with the reputation of the firm here involved may very well command consid-

erable respect of liability carriers when suit is said to be forthcoming if a reasonable settlement is not reached.

**10.** The agent was not an adjustor for State Farm Mutual. He was a State Farm employee or agent who sold insurance, making it even less reasonable to consider that any so-called "notice" to him was notice to the company—which it didn't even purport to be. He was simply asked a question, and answered. This Court had little trouble in declaring that such could not constitute a waiver.

*claim to any amount.*[11] Or, otherwise put, the plaintiffs sought to retain *all* of the collected proceeds. That which the agent uttered amounted to no more than his saying that he did not know what the company might do. Nothing more can be made of the statement than that the man did not know.

What *is* involved is the application of the general rule which required honoring the insurer's right of subrogation (done here), the recovery to the insurer being subject to reduction by the amounts the insureds expended in collecting it from the liability carrier of the party at fault (done here). This Court concluded its *Cedarholm* opinion by correctly stating the general rule as then found in the 1959 edition of 29 American Jurisprudence, § 1346, which in the following year went wholly unchanged, although § 1346 was broken down into §§ 1736, 1737, 1739, 1740. That rule allows the insured "to reimburse himself" for "the costs and reasonable expenses incurred in the litigation, for it would be unjust (otherwise)". 81 Idaho at 142, 338 P.2d at 99. That rule is easily read and understood. Judge Meehl properly applied the rule of *Cedarholm* to the case before him—a correct application of the doctrine of *stare decisis.*

He will be as surprised as am I to learn that he erred. I have read and attach hereto as Appendix A, copies of pertinent portions of the three cases which Justice Johnson asserts—to the satisfaction of those who join his opinion—stand for the proposition that an insured is a gratuitous volunteer where he collects and holds for the insurer certain medical payments to which it is rightfully subrogated and entitled to be reimbursed.

As just one reader of law for over forty-some years, I am unable to see in the slightest that those cases confirm Justice Johnson's reading that those cases somehow, *sub silentio,* were *held* in *Cedarholm* to state the Idaho case law which Justice Johnson promotes, namely, that "[n]otice to an insurer is a necessary prerequisite in a case like this before the insured is entitled to charge the insurer for attorney's fees for the recovery of the subrogated interest." 116 Idaho at 658, 778 P.2d 780. Conceded that the non-contemporaneous 1970 *Geline* case from Wisconsin established such a notice requirement, a close reading of that case demonstrates that the Wisconsin court was well aware that it was making *new* law, and therefore made its holding applicable to *future* cases only.[12] Which may or may not be good for Wisconsin. Here in Idaho, I fear that those who have become Justice Johnson's majority are not well aware that they endorse a shift in case law precedent, which, although such does happen, is generally declared, and prior precedent to the contrary is specifically overruled.

As to the three cases, *Shawnee, Svea,* and *Newcomb,* which were continued in footnotes, all three have naught to do with any requirement that the insured give notice to the insurer as a prerequisite to compensation for collecting.[13] NOWHERE in said § 1740, or its identical precursor, § 1346, is there any discussion of such notice, either as a prerequisite, or at all. The Kansas case on examination is entirely void of any such discussion. In fact, Justice Johnson says of it only that "the court

---

**11.** The holding of *Cedarholm* on the waiver issue is not involved here.

**12.** The *Geline* case will not be well-received by the courts of states other than Idaho. However, the court at least recognized that it was making new law for Wisconsin, and, notwithstanding that it concluded the insurer had actual knowledge that the insureds were pursuing a collection of the subrogated rights along with their personal injury damages, it denounced the failure of the insureds to notify that a fee would be exacted. The best that can be said of *Geline* is that it went on to conclude that:

> Therefore, in the instant case, we would not hold plaintiff's attorney to anticipating of ei-

ther what the trial court or this court would do or require him to do in establishing an equitable basis for payment to him by State Farm and Associated Hospital for work performed by him from which they benefit. *State Farm Mutual Automobile Ins. Co. v. Geline,* 48 Wis.2d 290, 297, 179 N.W.2d 815, 822 (1970). A noble gesture indeed.

**13.** Attached hereto as Appendix B is a photocopy of page 816 of 29A Am.Jur. which contains the statement of the general rule—exactly as it was stated thirty years ago by this Court in *Cedarholm,* and exactly as it was restated by Judge Meehl in June of 1988.

pointed out that the insurer was notified that a settlement was being discussed." 116 Idaho at 658, 778 P.2d at 780. True enough, but that statement was not incorporated into a holding that prior notice was a prerequisite. That is a far cry from being notified, and notified as to what. The most that I can find in *Shawnee* is that the insurance company had knowledge of the pending suit, employed no attorney to represent it in that litigation, nor offered to pay any costs or attorney's fees of litigation. Only after losing, on a motion for a new trial, an attorney for the insurer notified the insured that if a compromise settlement was reached: "[T]he Shawnee Fire Insurance Co. will claim such proportion of that recovery as we have paid out on this insurance policy." That is the exact format in *Miner v. Farmers.* The proportionate share here appears to be two-thirds of the recovered $4,773.17.

The trilogy of cases upon which Justice Johnson predicates his holding, namely *Shawnee* from Kansas, *Svea* from Maryland, and *Newcomb* from Ohio, are cited in footnote 13, and properly so, but only for the general rule, which is exactly what Judge Meehl did. That same trilogy of cases is also cited in footnote 9, for the proposition stated in the text, that most courts *in allowing reimbursement to the insurer* limit the recovery against the insured to the amount by which the sum received by the insured exceeds the loss and the expense incurred by the insured in realizing on the claim against the wrongdoer, at least where the insured acted in good faith and the insurer did not participate or assist in the collection of that claim.

The article then explains that some courts distinguish between the insured effecting a complete recovery as against a partial recovery, and then states the general rule.

The general rule is restated in the 1982 revision of Am.Jur.2d, Vol. 44, p. 808, § 1820 as it was stated initially in the 1959 and 1960 versions. The same trilogy of cases, *Shawnee, Svea,* and *Newcomb* are cited in support thereof, plus one later case each from Arkansas, Massachusetts, and Nebraska. Nothing in § 1820 makes any mention of a rule of law which requires putting an insurer on notice as a prerequisite to the insured's right to be reimbursed out of funds recovered for his costs, fees and expenses incurred in obtaining the recovery.

Considerable guidance is provided in the 1974 *Clinton* case from one of our border states to the west. *State Farm Mutual Automobile Ins. Co. v. Clinton,* 518 P.2d 645 (Or.1974). It lays low the proposition espoused by Justice Johnson which is supported only by *Geline* and Justice Johnson's remarkably strained reading of the trilogy of ancient cases that, absent prior advance notice by an insured to his insurer, the services recovering on behalf of the insurer are wholly gratuitous.

*Clinton* stated the true rule almost exactly like it is found in *Cedarholm,* "that an insured who is successful in the recovery of funds which include money payable by the insured to an insurance company is entitled to deduct attorney fees and other expenses reasonably and necessarily incurred in making such a recovery from the amount payable to the insurance company." 518 P.2d at 647.

Accordingly, as one member of the Court, I see that the established rule of *Cedarholm* has served Idaho well. I strongly dissent from the direction in which Justice Johnson moves the Court to the detriment of *stare decisis.* I am left wholly in the dark as to the importance of making new law at the expense of Clinton Miner and his wife, by putting three ancient cases to a use which they were never ever before put.

**SHAWNEE FIRE INS. CO. v. COSGROVE et al.**

(Supreme Court of Kansas. July, 1911.)

*(Syllabus by the Court.)*

1. INSURANCE (§ 606*)—S U B R O G A T I O N— RIGHTS OF INSURANCE COMPANY.

Where a loss by fire is occasioned to insured property by a wrongdoer and the loss exceeds the amount of insurance, the insured owner is the only proper party to recover damages from the wrongdoer.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1506; Dec. Dig. § 606.*]

2. INSURANCE (§ 606*) — FIRE CAUSED BY WRONGDOER—SUBROGATION—ACTION OF INSURED—INTERVENTION.

In such case, if the insured brings an action for the recovery of the loss from the wrongdoer and the insurer is informed of the pendency of the action, that the insured does not wish to represent the interests of the insurer, and that there is talk of a settlement between the insured and the wrongdoer, it is the duty of the insurer to intervene in the action, and protect his own interests.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 606.*]

3. INSURANCE (§ 606*)—RIGHTS OF INSURER— SETTLEMENT OF INSURED WITH WRONGDOER.

Where in such case the insured accepts, on settlement, damages from the wrongdoer which, added to the amount of the insurance, is less than the amount of his loss and expenses of litigation, the insurer, having made no effort to intervene and protect his own rights, can recover nothing from the insured.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1507; Dec. Dig. § 606.*]

Appeal from District Court, Johnson County.

Action by the Shawnee Fire Insurance Company against James H. Cosgrove and Lyman E. Hancock. Judgment for defendants, and plaintiff appeals. Affirmed.

Mulvane & Gault and D. R. Hite, for appellant. C. L. Randall, for appellees.

SMITH, J. The appellant brought this action against the appellees to recover the sum of $500 which they had paid to the appellees on a policy of insurance, less its proportion of the expenses incurred by the appellees in the collection of their claim against the railroad company. The case was tried to the court without a jury, and at the conclusion of the evidence the court made findings of fact, in substance, as follows: That the appellees were the owners of a certain building and contents which were insured in the sum of $500 in the appellant's company, and $675 in other companies. The building was totally destroyed by fire. The value of the building was $2,100 and of the contents $1,400. On proof of loss the appellant paid the appellees the sum of $500, and the appellees also collected the $675 other insurance. Thereafter the appellees brought suit against the St. Louis & San Francisco Railway Company to recover the loss occasioned by the fire, alleging that the fire had been set by the railroad company. In this suit they alleged the loss to be $3,500, but asked judgment for only $1,950 and attorney's fees. During the pendency of that action the suit was compromised without trial and dismissed by the appellees on payment by the railroad company of $1,500. The costs and attorney's fees paid by the appellees were between $425 and $440. The appellant had knowledge of the suit at the time it was pending, but took no part in the litigation, except the company advised with the attorneys for the appellees, which, however, was unknown to the appellees. The insurance company employed no attorney to represent them in the above litigation, nor offered to pay any of the costs or attorney's fees of the litigation. The actual loss by the fire was $3,500. As a conclusion of law the court found that the insurance company was not entitled to recover in this action, and ren-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

dered judgment against it for the costs. The insurance company filed a motion for a new trial, and on the hearing of this motion one of the attorneys for the insurance company testified that during the pendency of the action he discussed the case with the attorney for the appellees, and manifested a willingness to do anything in his power to assist in the prosecution of the case, but was informed by the appellees' attorney that he did not desire to represent the company, and that his clients did not want him so to do; that the witness inquired whether a compromise between the appellees and the railroad company was pending, and was informed that it had been talked about a little, whereupon the witness said, "I want to advise you now that if your client compromises this case, or you compromise it, or anything is done with reference to it by which your client recovers, the Shawnee Fire Insurance Company will claim such proportion of that recovery as we have paid out on this insurance policy." Individual members of the firm testified on this hearing that they knew nothing of any arrangement between their attorney and the attorneys for the appellant relative to the representation of the appellant in the litigation with the railroad company.

[1] Practically the only question involved is whether the insurance company had any legal right to depend upon the appellees to defend their rights, or whether it was the duty of the insurance company to join hands with the appellees in the prosecution of the suit, or to intervene and set forth its rights. There is no question but that the insurance company could not have brought the action in its own name. The loss was greater than the amount of the insurance. That the suit against the railroad company for the loss was properly brought by the appellees, and not by the appellant, and that, as the loss was greater than the amount of the insurance, the appellant could not bring an independent action, is indicated by Railroad Co. v. Insurance Co., 59 Kan. 432, 53 Pac. 459, and Norwich Union Fire Ins. Soc. v. Standard Oil Co., 59 Fed. 984, 8 C. C. A. 433. The reason for this is shown in the latter case by a quotation from an opinion by Judge Dillon in Ætna Insurance Co. v. Hannibal & St. Joseph R. R. Co., 3 Dill. 1, Fed. Cas. No. 96: "If one insurer may sue, then if there are a dozen, each may sue; and, if the aggregate amount of all the policies falls short of the actual loss, the owner could sue for the balance. This is not permitted, and so it was held nearly a hundred years ago, in a case whose authority has been recognized ever since, both in Great Britain and in this country." It is also held in these cases that if the insured having been paid his loss, or a portion of it, by the insurer, recovers an amount from the wrongdoer in excess of the amount of the balance of his loss and expenses of suit, after deducting the amount paid him by the insurance company, he holds such balance in trust for the insurer; but it is not held in these cases that the insured is entitled to retain the entire amount of his loss and expenses of suit and also the amount paid by the insurance company, nor that the insurer is powerless to protect its interests in the action.

[2] While the insured is the only proper party to bring the suit against the wrongdoer, it does not follow that the insurer is powerless to protect his own interests, but for this purpose he may intervene, or, by consent of the insured, may join hands with him in the prosecution of the case. If, as in this case, the insurer is notified that the insured does not wish to solely represent the insurer, then it is the duty of the insurer to protect his own rights, especially when he had notice that a settlement was talked of. L. E. & W. R. R. Co. v. Falk & Phœnix Ins. Co., 62 Ohio St. 297, 56 N. E. 1020; T. & F. S. Ry. Co.. v. Insurance Co., 17 Tex. Civ. App. 498, 44 S. W. 533.

[3] After an insurer has intervened and shown he has a monetary interest in the result of the action, it is not to be presumed that any court would permit a settlement between the insured and the wrongdoer to the detriment of the insurer, but, on the contrary, that the rights of all parties would be protected.

Under the circumstances of this case, the appellant, having made no effort to intervene and look after its own interests, cannot hold the appellees responsible for settling the case as they thought best for their own interests.

The judgment is affirmed. All the Justices concurring.

*Svea Assurance Company of Gothenberg, Sweden, Appt., v. Eldridge Packham, Jr., et al.*, 92 Md. 464, 48 A. 359 (1901).

3. Having determined that the insured can make a settlement for less than he recovered of the insurance companies, under such facts as are before us, it remains to be determined whether Mr. Packham can retain any portion of this verdict until he has fully satisfied the insurers. There can be no doubt about his right to retain out of the fund his costs and reasonable expenses incurred in the litigation. It would, indeed, be a harsh rule if he must be required to incur costs and expenses in the recovery of money for the benefit of insurers without reimbursing himself out of the fund so recovered. There is no evidence to show that the amount he agreed to allow the attorneys was unreasonable or excessive. Cases of that character are generally defended by all the means the law affords. They often result in several trials, and usually the receipt of the compensation is greatly delayed, when taken on a contingency.

. . . .

In *Newcomb v. Cincinnati Ins. Co.*, 22 Ohio St. 382, 10 Am.Rep. 746, after fully recognizing the right of the insurer to be subrogated to a claim against the wrongdoer, the court said: 'But the assured will not, in the forum of conscience, be required to account for more than the surplus which may remain in his hands after satisfying his own excess of loss in full, and his reasonable expenses incurred in its recovery unless the underwriter shall, on notice and opportunity given, have contributed to, and made common cause with him, in the prosecution.' Without citing other authorities on that subject, we are of the opinion that it would be inequitable to deprive the attorneys of the fees agreed to be allowed, or to hold the insured responsible for them and the costs incurred in the prosecution of the case.

We will not consider the right of Mr. Packham to retain the remainder of the $9,000, in excess of fees and expenses.

In the first place it may be well to ascertain the effect of the subrogation receipt, which, as we have said, in substance follows the provision in the policy and need not be quoted. Broad as its language is, it cannot be construed to apply to any claims or demands beyond those made by reason of the loss or injury to the properly insured. If, for example, Mr. Packham had owned the house in which the merchandise was stored, and the negligence of the gas company had caused both to be destroyed, it was evidently not the intention of the parties to assign any claim he might have had for the loss of the house.

When the loss occurs though the tort of a wrongdoer the insurer is entitled to be subrogated to the claim of the insured for the loss of the insured property, not of other property. The money paid by the appellant was for loss and damage 'to the property insured by' its policy, and the assignment had reference to that, and not to any other property, such, for example, as the office furniture, etc., insured by the German Fire Insurance Company, and the subject of dispute in the *Packham Case* above referred to or to loss of profits in the assured's business.

There can be no doubt from the evidence that Packham, by his suit against the gas company, was seeking to recover for losses other than the merchandise destroyed or injured.

The testimony abundantly shows that such was being attempted when the case was settled, and, if the defendant had raised any question as to his right to do so under the pleadings, the declaration could have been amended, if necessary. It is well settled in this state that in actions of tort the loss of profits in a trade or business may be recovered, if it be the direct result of the defendant's wrongful act and is proved with sufficient certainty. *Brown v. Werner*, 40 Md. 15; *Shafer v. Wilson*, 44 Md. 268; *Lawson v. Price*, 45 Md. 138; *Evans v. Murphy*, 87 Md. 398, 40 Atl. 109 (1898). Mr. Packham testified that the damage done his business by the fire up to the

time of trial, approximated $18,000 to $20,000; he said he had fifty-one persons on his pay-roll and 'had lost of salaries of people in my employ to carry over,' had the rent of two warehouses for several months and other things he mentioned.

. . . .

[I]t is manifest that he was making a bona fide effort to recover damages for the merchandise, which he knew would go to the insurance companies to the extent of their loss, and also for other losses which he had sustained. While engaged in that effort the offer of settlement was made, and he only consented to accept it when urged by the representatives of the companies present, and upon the express understanding that the verdict should be divided.

. . . .

The insured could not have brought several actions, but was compelled to recover for all his losses sustained by that fire in one suit. Therefore when he was claiming damages for losses other than those which the insurance companies were entitled to, it would have been proper, if under the rulings of the court he might recover other damages, to have had the jury determine the amounts allowed on the respective claims.

. . . .

The case then is practically as if the insured had accepted $9,000 for loss of the insured property, and had thereby released the wrongdoer as to the balance. From what we have already said it can be seen that we are of the opinion that he could, under the peculiar circumstances of this case, do so without being held liable to the appellant for more than its proportion of the amount recovered, after deducting costs and expenses incurred by him.

It would be very inequitable to permit one of eight or nine insurers to stand off and refuse to take part in a suit brought by the insured, and let him, at the instance and with the consent of the others, settle for an agreed amount and then come into a court of equity and exact payment in full of him, when the others only get a part. The other companies did perform their duty towards the insured, and they, representing a majority of the claims, not only induced him to accept what they doubtless thought was for their benefit, but by means of that inducement possibly caused him to accept less for his individual claims than he might have received, especially if out of the $6,300, the net pay the appellant and any other company that occupies a similar position their claims in full.

WEST, J. The Cincinnati Insurance Co., defendant in error brought its action against the plaintiffs in error, in the superior court of Cincinnati, to compel the refunding of $1,617.15 paid to them on a policy of insurance. The cause was tried by the court at special term, wherein it was reserved, on the evidence, to, and was decided at, the general term. The judgment at general term is now sought to be reversed in this proceeding.

The record contains what purports to be all the evidence heard at special term, and to have been certified up with the order of reservation. The court in general term so find, and direct it to be made part of the record.

Generally, the evidence heard on the trial of a cause in an inferior court can be brought here for review, on errors assigned, by bills of exceptions only. This has been repeatedly held by this court. No such bill is discovered in this record. Whether it was competent for the court to attach the evidence as an exhibit to its special finding, and thus make it serve the office of a bill of exceptions, we have not deemed it necessary to determine, but have limited our inquiries to questions arising on the pleadings, and the special findings proper of the court.

In the original petition it is disclosed that the defendant in error seeks re-imbursement of moneys, paid to plaintiffs in error on a policy of insurance, on account of injuries to their steamboat "Wm. Noble," and for their liability in general average on jettison of cargo, resulting from a collision with the steamer "Fashion," the whole of which losses, it is alleged, the plaintiffs in error subsequently recovered as damages, in an action against the.owners of the latter vessel, as negligent wrong-doers.

In their answer to this petition the plaintiffs in error admit the collision, resulting jettison of cargo and injuries to their vessel, the fact and payment of the insurance thereon, and the subsequent action and recovery against the owners of the "Fashion." But they deny that in said action they recovered the items paid to them on the adjustment of said insurance. On the contrary they aver that, by said collision, they sustained losses other than and in

addition to those items; that their aggregate losses, for which they sued, exceeded $15,000, but that they recovered from the owners of the " Fashion " only $11,086, a sum much less than the excess of their losses above the items covered by insurance; that the costs of said collision suit exceeded $5,000; that the defendant in error was not a party to said suit; that it expressly declined and refused, on request, to contribute to or in any manner aid in its prosecution; and that it released and abandoned its claim to the proceeds of said suit. The plaintiffs, therefore, controvert their liability to refund.

By the reply, the allegation of the answer, that defendant in error refused, on request, to aid in or in any manner contribute to the prosecution of the collision suit, is not controverted.

The superior court, at general term, made a " special finding," as follows:

" The court, being fully advised in the premises, does find that the defendant paid out, in and about the prosecution of the collision suit against the owners of the steamboat, 'Fashion,' the sum of $4,167.40, and is entitled to the further sum of $2,500 for his services in preparing the said suit; and is therefore entitled to have the sum of $6,667.46 first to be credited upon the sum received in the collision suit; which, being deducted from the sum so named, leaves the sum of $4,418.60; that the plaintiff's claim, as set out in his petition, with interest to the first of this term, amounts to $2,538.

" The court does further find and hold that the plaintiff in this case is bound by the finding in the collision suit, and cannot be permitted to show that his real damages resulting from the collision, and involved in the suit, were greater than the amount found by the verdict, or to go into the same in this suit; and that the plaintiffs are entitled to such proportion of said sum of $4,418,60, as the said sum of $2,538 bears to $11,086, the amount recovered in the collision suit — to wit, the sum of $1,011.44. The court does, therefore, assess the plaintiff's damages at the said sum of $1,011.44.

" And the said evidence, upon which the case was reserved, was all the evidence in the case, and the same is hereto attached, marked ' A,' and made part of the record in the case.

" And the counsel severally excepted to each of the findings and holdings, and his exceptions were allowed and ordered to be made part of the record."

Newcomb v. The Cincinnati Insurance Co.

In the view we have taken of the case, while we doubt the correct-ness of the ruling below, which held that the plaintiffs in error " were bound by the findings in the collision suit," we deem it unnecesssary to pass upon the question.

The defendant in error founds its claim on the doctrine of subro-gation. This may be stated as follows: Where a loss covered by insurance is occasioned by a wrong-doer, the underwriter, after re-im-bursing it in specie, or making compensation in money, is, in a proper case, entitled to be subrogated, *quoad hoc*, to the right of the assured against the wrong-doer. This is of the highest equity; for whereas the loss is, in the first instance, that of the assured, after re-imburse-ment or compensation it becomes the loss of the insurer.

The plaintiffs in error insist that the doctrine, if ever recognized, has been doubted by modern decisions. We do not so think. It was fully recognized by Lord HARDWICK in the early case of *Ran-dal* v. *Cockran,* 1 Ves. Sen. 98, with which the American cases are in nearly universal accord. The loss of mortgaged premises, insured at the instance of the mortgagee, presents a case *sui generis,* for rejection of the application of the doctrine.

There are two classes of cases for its application: *First,* Where the total loss sustained is covered by insurance, and re-imbursed or com-pensated by the underwriter; *Second,* When the loss sustained is but partially covered by insurance, and is re-imbursed or compensated accordingly. These may be respectively denominated *full insurance* and *partial insurance.*

In case of partial insurance, which class is the one at bar, the assured and underwriter have each a substantive interest in the claim against the wrong-doer; whereas, in a case of full insurance and compensation, the interest of the former is but nominal.

Where the assured, as in case of partial insurance. sustains a loss in excess of the re-imbursement or compensation by the underwriter, he has an undoubted right to have it satisfied by action against the wrong-doer. But if, by such action, there comes into his hands any sum for which, in equity and good conscience, he ought to account to the underwriter, re-imbursement will, to that extent, be compelled in an action by the latter, based on his right in equity to subrogation. But the assured will not, in the forum of conscience, be required to account for more than the surplus which may remain in his hands, after satisfying his own excess of loss in full and his reasonable expenses incurred in its recovery; unless the under-

DECEMBER TERM, 1872. 751

The First National Bank of Columbus v. Garlinghouse.

writer shall, on notice and opportunity given, have contributed to, and made common cause with him, in the prosecution.

In this case, the losses of the plaintiffs in error, in excess of insurance, exceeded $9,000; their recovery was $11,086. The costs of prosecuting the action exceeded $6,000. The amount applicable to their excess of loss, after payment of expenses, was insufficient to satisfy it. It is not unconscionable that they return this: It would be, to award any part of it to the defendant in error, who refused to hazard the costs of its recovery.

On the special findings of the superior court, their judgment will be reversed, and the judgment entered here for the plaintiffs in error, which the court below ought to have rendered.

*Judgment reversed.*

§ 1740. **Amount and Extent of Recovery by Insurer.**—Most of the courts, in applying the rule for reimbursement of the insurer, limit the recovery against the insured to the amount by which the sum received by the latter from the wrongdoer, together with the insurance, exceeds the loss and the expense incurred by the insured in realizing on the claim against the wrongdoer, at least where the insured acted in good faith and the insurer did not participate or assist in the collection of that claim.[9] But from the decisions in some of the courts it would appear that in case the insured has recovered from the wrongdoer, the insurer may be reimbursed from that fund, allowing the insured the expense of litigation, for the amount which it has paid out, regardless of whether the insured recovered the full amount of his loss.[10] Apparently, however, the courts, in some of these cases at least, were influenced by the fact that the insured was purposely trying to defeat the right of subrogation given the insurer by the contract;[11] and evidently the position sometimes taken by the courts is that the actual property loss incurred by the insured is determined by the amount which he recovers from the person causing the loss.[12]

The general rule is that the insured may retain out of the fund recovered from the wrongdoer, after the payment of the policy, the costs and reasonable expenses incurred in the litigation, for it would be unjust to require him to incur expenses for the recovery of money for the benefit of the insurer, without being allowed to reimburse himself.[13] This rule does not, however, hold true where, after recovering from the wrongdoer, the insured fraudulently assigns the judgment for the purpose of defeating the insurer's rights,[14] nor does it hold true where the insured releases the wrongdoer so as to defeat the insurer's right of subrogation.[15]

§ 1741. **—Valued Policies.**—In respect of the right of the insurer to the money received by the insured from a third person liable for the loss, where the property is covered by a valued policy—a policy wherein the value of the

sired a special finding of such damage, to ask for such a finding. Otherwise, the court said, he would be considered to have accepted the amount of insurance received by him less the expense of presenting that phase of the case as the measure of his obligation as trustee.

9 Shawnee F. Ins. Co. v Cosgrove, 85 Kan 296, 116 P 819, 41 LRA NS 719; Fire Asso. of Phila. v Wells, 84 NJ Eq 484, 94 A 619, LRA1916A 1280, Ann Cas 1917A 1296; Newcomb v Cincinnati Ins. Co. 22 Ohio St 382, 10 Am Rep 746.

Anno: 51 ALR2d 719.

10 Egan v British & F. M. Ins. Co. 193 Ill 295, 61 NE 1081, 86 Am St Rep 342 (valued policy); Packham v German F. Ins. Co. 91 Md 515, 46 A 1066, 50 LRA 828, 80 Am St Rep 461.

11 In Illinois Auto. Ins. Exch. v Braun, 280 Pa 550, 124 A 691, 36 ALR 1262, the court held that an insured who has released the wrongdoer, thereby defeating the insurer's right of subrogation, cannot avail himself of the principle that the amount which he is required to return to the insurer is to be the sum received by him from the wrongdoer and the insurer in excess of his loss, after deducting the expenses of litigation.

12 Illinois Auto. Ins. Exch. v Braun, supra.

13 Shawnee F. Ins. Co. v Cosgrove, 85

Kan 296, 116 P 819, 41 LRA NS 719; Svea Assur. Co. v Packham, 92 Md 464, 48 A 359, 52 LRA 95; Newcomb v Cincinnati Ins. Co. 22 Ohio St 382, 10 Am Rep 746.

14 If, after the insurers pay a loss, under policies which gave the insurers the right to be subrogated to the extent of the payments under the policies, to all rights of recovery by the insured against persons causing the loss, the insured, with the purpose and intent of defrauding the insurers, recovers judgment against the railroad company causing the loss, which judgment is fraudulently assigned, the insurers are entitled to be reimbursed out of the judgment recovered, the amounts which they paid out under the policies, without being compelled to contribute to the payment of the expenses incurred for services rendered in recovering the said judgment. Cary v Phoenix Ins. Co. 83 Conn 690, 78 A 426.

15 An insured who, after receiving the amount of his loss from the insurer, releases the wrongdoer so as to defeat the insurer's right of subrogation, is not entitled to retain from the amount to be returned to the insurer the counsel fees and expenses expended in the litigation which fixed the amount due under the policy, nor the expenses of a suit which he had instituted against the wrongdoer before executing the release. Illinois Auto. Ins. Exch.