917 P.2d 1300

**UNION WAREHOUSE AND SUPPLY CO., INC., an incorporated association, Plaintiff–Respondent,**

v.

**ILLINOIS R.B. JONES, INC., a corporation; and Steven Bruce Booker, for himself and those other underwriters at Lloyd's, London, binding certain Seedsmen's Errors and Omissions Coverage, and Signatory to Certificate # AH404071, Defendants, Third–Party Plaintiffs–Appellants,**

and

**Mutual Service Casualty Insurance Company, Third–Party Defendant–Respondent.**

No. 21468.

Supreme Court of Idaho, North Idaho, October 1995 Term.

June 5, 1996.

Evans, Keane, Boise, for appellants. Bruce C. Jones, argued.

Dee, MacGregor & Fales, Grangeville, for respondent Union Warehouse and Supply Co., Inc. Wayne C. MacGregor, argued.

Keefe, King & Bowman, Spokane, Washington, for respondent Mutual Service Casualty Insurance Co. David A. Goicoechea, argued.

TROUT, Justice.

This is an insurance coverage dispute arising from the sale of contaminated winter wheat seed.

## I.

## BACKGROUND

The respondent, Union Warehouse and Supply Co. (Union), is a cooperative marketing association that purchases, stores, and sells seed to farmers in the Grangeville area. Union was insured under three insurance policies: (1) a Comprehensive General Liability (CGL) policy issued by Mutual Service Casualty Insurance Co. (MSI); (2) an Umbrella policy also issued by MSI; and (3) a Seedsmen's Errors and Omissions policy underwritten by certain underwriters at Lloyd's of London (Underwriters) and brokered through Illinois R.B. Jones, Inc. (Jones). The Seedsmen's policy was purchased by Union to cover any economic losses resulting from its operation. As discussed more fully below, coverage under the MSI policies is not at issue in this appeal.

In 1991, Union purchased what it believed to be uncontaminated winter wheat seed. However, samples of this seed were sent away for testing and the test results indicated that the seed was contaminated with jointed goatgrass seed, which is classified as a noxious weed. Before the test results were received by Union, a portion of the seed was sold to local farmers. Furthermore, after they were received, the test results were filed by Union without noting the contamina-

tion problem and additional seed was then sold from the lot. In all, approximately twenty farmers purchased contaminated winter wheat seed from Union Warehouse.

Roughly one month after the last sale of seed from the contaminated lot, a farmer who had purchased some of the seed discovered goatgrass kernels in his grain drill and brought the problem to Union's attention. On October 11, 1991, Union informed Underwriters of potential claims arising from the sale of contaminated seed. However, at that point no lawsuit had been filed by any purchasers of seed. Underwriters indicated that there was probably only coverage for one year's crop loss and requested that Union notify them in the event it received any service of process or pleadings relating to contaminated seed. Union subsequently notified MSI of the potential claims.

Because jointed goatgrass is difficult to eradicate, Union and MSI immediately took steps to determine the scope of the problem. They obtained the assistance of Dr. Guenthner of the University of Idaho who developed a crop rotation plan which, if followed, would allegedly eradicate the goatgrass over a five-year period. Dr. Guenthner also surveyed the affected farmers' fields and estimated the damages these farmers would likely incur in following the plan (apparently, the plan involved the planting of crops less profitable than winter wheat). However, as the district court found, there is no evidence in the record that any of the farmers actually followed the eradication plan, and no evidence (other than projections) of any actual loss that exceeded the MSI CGL policy limits. Although it denied coverage under its Umbrella policy, MSI notified Union that it had one million dollars in coverage under the CGL policy.

On March 13, 1992, Union brought the present action joined against Underwriters seeking a court determination of coverage under the Seedsmen's policy. Subsequently, settlement agreements were entered into between Union, MSI, and the injured farmers, whereby (1) MSI tendered the limits of its

CGL policy; (2) the farmers released Union and MSI from all liability except liability that might be covered under the Seedsmen's policy; (3) Union assigned its rights under the Seedsmen's policy to the farmers; and (4) Union and MSI agreed to continue to maintain the present action. On October 16, 1992, Union filed an amended complaint which named Jones as a defendant.

## II.

### PROCEDURAL HISTORY

On November 18, 1992, Underwriters moved for summary judgment on the grounds that Union breached a consent-to-settle/cooperation clause (Condition 3(b)) in the Seedsmen's policy, that a property damage exclusion in the policy applied, and that Union was not the real party in interest. At the same time, Jones moved to dismiss Union's amended complaint as against it on the ground that it was not a co-insurer under Idaho law. Union filed a cross-motion for summary judgment requesting a ruling that Underwriters were obligated to provide coverage, and that the exclusion in the Seedsmen's policy did not apply. On March 31, 1993, Underwriters moved to dismiss Union's amended complaint on the ground that with no lawsuits filed against Union, there was no justiciable controversy. The trial court denied the motion but certified the issue for interlocutory appeal. This Court declined to accept the appeal. In response to encouragement by Union, five farmers subsequently filed suit against it.

On June 9, 1993, Underwriters filed an amended third-party complaint against MSI. They then moved for summary judgment seeking a declaration that the Seedsmen's policy was excess to the MSI Umbrella policy. MSI filed a cross-motion for summary judgment on the ground that its Umbrella policy excluded coverage for property damage resulting from the presence of noxious weeds, and that its policy was excess to the Seedsmen's policy. On January 28, 1994, Union moved for summary judgment against

Underwriters on Underwriters' counterclaims relating to coverage and Union's duty to cooperate. Underwriters then moved for summary judgment on the additional ground that because Union was released from liability, there was no obligation to indemnify under the Seedsmen's policy.

The district court concluded that the Seedsmen's policy provided coverage; that there was no "property damage" within the meaning of the exclusion in the Seedsmen's policy; that Underwriters had a duty to defend Union; that Union did not breach Condition 3(b) in the Seedsmen's policy; that the MSI Umbrella policy did not provide coverage, and that even if it did, that coverage was excess to coverage under the Seedsmen's policy. It also found that Jones was Underwriters' agent and dismissed that party from the action without prejudice.

With regard to requests for attorney fees made by Union and MSI, the trial court found that Union was a "prevailing party" and that notice pursuant to I.C. § 41–1839 was given to Underwriters. It also found that a "commercial transaction" within the meaning of I.C. § 12–120(3) was the gravamen of the action. Accordingly, an award of attorney fees was granted to Union under both I.C. §§ 41–1839 and 12–120(3). MSI's requests for attorney fees and costs were denied.

## III.

### MSI IS NOT A PROPER PARTY TO THIS APPEAL

█ As a threshold matter we conclude that although it is named as a respondent, MSI is not properly a party to this appeal. There is no dispute relating to coverage under the MSI CGL policy, or priority of coverage between that policy and the Seedsmen's policy. Further, although MSI makes assertions regarding priority of coverage between its Umbrella policy and the Seedsmen's policy, Underwriters did not appeal from any determination relating to coverage under the Umbrella policy. Finally, MSI asserts a

right to an award of attorney fees below, but did not cross-appeal from the denial of its request for attorney fees by the district court. Since there are no issues presented on appeal that relate to MSI, that party is hereby dismissed.

## IV.

### REAL PARTY IN INTEREST

■ On November 18, 1992, Underwriters filed a motion for summary judgment alleging that Union was not the real party in interest pursuant to I.R.C.P. 17(a) and therefore lacked standing to prosecute this action. The district court summarily denied this motion. On appeal, Underwriters contend that the district court erred.

■ I.R.C.P. 17(a) provides in relevant part:

Every action shall be prosecuted in the name of the real party in interest.... No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest....

An assignor of a chose in action is not the real party in interest and has no standing to prosecute an action on the chose in action. *McCluskey v. Galland*, 95 Idaho 472, 511 P.2d 289 (1973). It follows that an assignor of all rights and causes of action under an insurance policy lacks standing to seek a declaration relating to a policy in which it no longer has an interest.

In the present case, Union assigned its rights under the Seedsmen's policy to the farmer-growers and thus is not the real party in interest. However, under the terms of Rule 17(a), an action may not be dismissed if the real parties in interest have ratified its commencement by a third party. The release agreements specifically refer to the declaratory judgment action and, in fact, re-

quire Union to continue to pursue and finance that action. Thus, the agreements which divest Union of its standing as the real party in interest also contain a ratification by the farmers of Union's continued prosecution of this action. Accordingly, Rule 17(a) does not require that this case be dismissed, and we will proceed to consider the remaining issues presented.

## V.

### IMPACT OF UNION'S SETTLEMENT ACTIVITIES

**A. Whether There was a Breach of Condition 3(b)**

Condition 3(b) in the Seedsmen's policy provides, as a condition precedent to Underwriters' duty to indemnify, that:

the Assured shall not without Underwriters' written consent admit liability for or settle any such claim for an amount in excess of the deductible. Underwriters shall be entitled to direct the defense of any such claim, but the Assured shall render all reasonable cooperation and assistance.

Underwriters contend that Union breached this provision and they assert this breach as a basis to void coverage. The district court concluded that Union's actions did not constitute a violation of either the consent-to-settle clause or the cooperation clause contained in Condition 3(b).

**1. Cooperation clause**

■ Underwriters contend that Union failed to "render all reasonable cooperation and assistance" when Union agreed to pursue the present litigation, and when it invited farmers to file suit against it. Even assuming that these activities violated the cooperation clause, we conclude that Underwriters cannot assert the violation as a basis to void coverage.

In *Leach v. Farmer's Auto. Interinsurance Exch.*, 70 Idaho 156, 213 P.2d 920 (1950), we stated that:

provisions for notice and cooperation in a liability insurance policy are valid, reasonable requirements, designed to afford the insurer an opportunity to defend, and to protect it against possible collusion between the assured and persons claiming covered damages; and that, in the absence of waiver or estoppel, a substantial breach of such conditions, *resulting in prejudice to the insurer,* will relieve it of responsibility both to the insured and injured third parties.

*Id.* at 160, 213 P.2d at 923 (emphasis added). "Both the fact of the violation of the conditions of the policy, and that prejudice resulted therefrom, are matters .... which must be pleaded and proved by the insurer." *Id.* at 161, 213 P.2d at 923. Further, the insurer is required to establish prejudice without benefit of a presumption. *Farley v. Farmers Ins. Exch.,* 91 Idaho 37, 41, 415 P.2d 680, 684 (1966).

In the present case, Underwriters contend that they were prejudiced by the very fact that Union has pursued this action seeking a declaration of coverage. Because the identity of the party seeking a declaration of coverage has no impact on the extent of Underwriters' contractual obligations, we disagree. Underwriters' position is that there is no coverage under the Seedsmen's policy for the farmers' claims. It is clear that they could make the same arguments relating to coverage regardless of which party (Union or the farmers) actually brought suit against them. Therefore, we hold that coverage under the Seedsmen's policy cannot be voided on the basis of a violation of the cooperation clause.

### 2. Consent-to-settle clause

■ The consent-to-settle clause contemplates an unauthorized settlement of a "claim for an amount in excess of the deductible." As the district court concluded, the unauthorized settlement of a claim for which Underwriters will not be responsible does not implicate the clause. In this case, the settlement agreements do not purport to compromise any claim under the Seedsmen's

policy. Rather, they specifically reserve the farmers' right to pursue their claims *to the extent of coverage under the Seedsmen's policy.* Therefore, we hold that the consent-to-settle clause was not breached, and that coverage under the Seedsmen's policy cannot be voided on this basis.

### B. Whether Union's Activities Removed the Claims From the Scope of the Insuring Clause in the Seedsmen's Policy

■ On a related issue, Underwriters also contend that even if coverage cannot be voided due to Union's actions in settling with the farmers, these settlements relieve Union of all liability and therefore take the farmers' claims outside the purview of the Seedsmen's policy. The insuring clause in the Seedsmen's policy provides that Underwriters will indemnify Union for "all sums which [Union] shall become legally obligated to pay." Underwriters contend that since Union has been released from all liability on the farmers' claims, it will never be "legally obligated to pay" anything.

Contrary to Underwriters' assertions, the partial settlement agreements do not purport to release Union from any liability that may be covered under the Seedsmen's policy. In fact, they expressly reserve the farmers' right to pursue such claims. Thus, Union may very well become "legally obligated to pay" the farmers' claims *to the extent of coverage under the Seedsmen's policy.* Accordingly, we hold that the partial release from liability contained in the settlement agreements has no impact on Underwriters' duty to indemnify.

### VI.

### DUTY TO DEFEND

The district court found that Union was "out there alone" without "defense or coverage from Underwriters." It also determined that Underwriters owed Union a defense in the five actions filed by the injured farmers.

On appeal, Underwriters contend that the district court erred and that they have no duty to defend Union.

■ The rule regarding when an insurer's contractual duty to defend arises is well-settled. "The duty to defend arises upon the filing of a complaint whose allegations, in whole or in part, read broadly, reveal a *potential* for liability that would be covered by the insured's policy." *County of Kootenai v. Western Casualty & Sur. Co.,* 113 Idaho 908, 910, 750 P.2d 87, 89 (1988) (quoting *State of Idaho v. Bunker Hill Co.,* 647 F.Supp. 1064, 1068 (D.Idaho 1986)) (emphasis in original). In this case, we have had some difficulty determining exactly what claims have been asserted against Union which could give rise to a duty to defend. The district court identified as "claims" the survey of affected farmers used in estimating damages likely to be incurred by the farmers in following Dr. Guenthner's suggested eradication program. It also relied upon the five underlying complaints which have actually been filed against Union.

■ With regard to the survey and damage estimation report issued by Dr. Guenthner, we refuse to consider these documents as claims which could give rise to a duty to defend. We simply have no basis to conclude that any farmers are actually asserting the information contained in these documents as claims against Union. Indeed, as the district court noted, there is no evidence in the record which suggests that the eradication program has even been followed. Accordingly, as to this group of "claims," we hold that neither this Court nor the district court has been presented with anything on which to base a ruling. For this reason, we will limit our discussion to the claims represented by the five complaints filed against Union.

■ In sharp contrast to the claims arguably represented by the damage estimation survey, we know from the record that five farmers have actually filed lawsuits against Union. Upon reading the complaints filed in these actions, it is clear that they at least state a claim for economic damage which is within the coverage of the Seedsmen's policy. Because these complaints reveal a potential for a covered liability, they give rise to a duty on the part of Underwriters to defend Union. *Id.* Accordingly, the portion of the district court's order relating to these five claims is affirmed. The portion of the district court's order relying upon the damage estimation survey is reversed.

## VII.

## THE PROPERTY DAMAGE EXCLUSION

■ Underwriters contend that the introduction of weed seed into the farmers' real property damaged the productivity of that property. Thus, any damage resulting from this incident falls within the terms of a provision in the Seedsmen's policy excluding from coverage "any claim or claims ... for damage to or destruction of the property of another." The district court held that this exclusion was inapplicable to damage resulting from the infestation of goatgrass, relying on expert testimony produced by Union that none of the property was damaged. Underwriters produced no evidence in support of its motion (or in opposition to Union's cross-motion) for summary judgment to establish a disputed question of fact on this issue. Since the facts relating to property damage are not in dispute, we affirm the district court's determination that no "property damage" occurred.

## VIII.

## UNDERWRITERS ARE NOT ENTITLED TO A DECLARATION THAT THE CLAIMS WERE SETTLED "FOR OR WITHIN THE CGL LIMITS"

■ Underwriters contend that in light of the fact that MSI and Union entered into settlement agreements with the farmers claiming losses, Underwriters are entitled to a declaration that the claims were settled "for or within the CGL limits," and that

there is no additional liability. The district court summarily denied this request.

By the express terms of the agreements in question, the parties did not intend a full settlement of all claims. Rather, the agreements clearly contemplate further action to determine the scope of Underwriters' liability. Thus, as a matter of law there has been no full settlement of the farmers' claims, and Underwriters are not entitled to the requested declaration.

## IX.

## THE DISTRICT COURT DID NOT ERR IN DISMISSING JONES WITHOUT PREJUDICE

■ Jones sought dismissal of Union's amended complaint pursuant to I.R.C.P. 12(b)(6). The district court complied and dismissed Jones from the action without prejudice. On appeal, Jones contends that the lower court erred in not dismissing it *with* prejudice.

■ By dismissing Jones from the action, the district court effectively dismissed Union's complaint as it relates to Jones without prejudice. The question of whether to dismiss a complaint with or without prejudice is a question vested in the sound discretion of the trial court. *Wells v. United States Life Ins. Co.,* 119 Idaho 160, 804 P.2d 333 (Ct. App.1991). *Cf. Jones v. Berezay,* 120 Idaho 332, 815 P.2d 1072 (1991) (discussing the discretion vested in trial courts in determining the terms and conditions for dismissal under I.R.C.P. 41(a)(2)). In determining whether a trial court abused its discretion, we ask: (1) whether that court correctly perceived the issue as one of discretion; (2) whether it acted within the outer boundaries of that discretion and consistently with any applicable legal standards; and (3) whether it reached its decision by an exercise of reason. *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989) (quoting *Associates Northwest, Inc. v. Beets,* 112 Idaho 603, 605, 733 P.2d 824, 826 (Ct.App.1987).

In the present case, the district court found that Jones acted as Underwriters' agent in the placement of the Seedsmen's policy, and that any coverage it obtained for Union under the policy was the responsibility of Underwriters. Since this action involves a dispute over coverage, the district court dismissed Jones from the action. It is conceivable, however, that Union could state a cause of action against Jones arising from its representations to Union. We hold that the trial court did not abuse its discretion in dismissing Jones without prejudice in order to give Union this opportunity.

## X.

## ATTORNEY FEES

### A. Union's Request For Attorney Fees

The district court awarded attorney fees to Union under both I.C. §§ 41–1839 and 12–120(3). Union also contends that it is entitled to an award of fees on appeal pursuant to § 12–120(3).

### 1. I.C. § 41–1839

■ Section 41–1839 of the Idaho Code provides in relevant part:

(1) Any insurer issuing any policy, certificate or contract of insurance, surety, guaranty or indemnity ... which shall fail for a period of thirty (30) days after proof of loss has been furnished ..., to pay to the person entitled thereto the amount justly due under such policy, certificate or contract, shall in any action thereafter brought against the insurer ... for recovery under the terms of the policy, certificate or contract, pay such further amount as the court shall adjudge reasonable as attorney's fees in such action.

We have held that § 41–1839 applies only in those instances where: (1) the insured has provided proof of a covered loss; (2) the insurer has failed to pay an amount justly due under the policy within thirty days of the proof of loss; and (3) the insured is thereaf-

ter compelled to bring suit to recover for the loss. *Hansen v. State Farm Mut. Auto. Ins. Co.*, 112 Idaho 663, 671, 735 P.2d 974, 982 (1987).

In this case, Union contends that Underwriters denied it coverage and a defense and therefore waived the proof of loss requirement of § 41–1839. *E.g., Bonner County v. Panhandle Rodeo Ass'n, Inc.*, 101 Idaho 772, 777, 620 P.2d 1102, 1107 (1980). However, even assuming that the proof of loss requirement has been waived, Union has presented no evidence establishing that Underwriters have failed to pay a specific amount "justly due" under the Seedsmen's policy, a distinct statutory requirement. Moreover, this is not an action to recover any specific amount claimed to be due which was necessitated by the denial of the same.[1] Accordingly, we hold that by its express terms, I.C. § 41–1839 is not implicated in this case, and the district court's award of attorney fees under this provision is hereby reversed.

### 2. I.C. § 12–120(3)

The district court also awarded attorney fees to Union pursuant to I.C. § 12–120(3). This provision provides that in any civil action to recover on a contract relating to a "commercial transaction," the prevailing party shall be allowed a reasonable attorney fee if the commercial transaction is the gravamen of the lawsuit. *Brower v. E.I. DuPont De Nemours & Co.*, 117 Idaho 780, 784, 792 P.2d 345, 349 (1990). The term "commercial transaction" is defined in § 12–120(3) to mean "all transactions except transactions for personal or household purposes." The contract of insurance at issue in this case was not for "personal or household purposes." Since Union brought this action seeking a judicial declaration regarding obligations grounded in that contract, a "commercial transaction" was the gravamen of this lawsuit. However, on March 20, 1996, I.C. § 41–1839 was amended to included subsection (4), which provides:

> (4) Notwithstanding any other provision of law to the contrary, this section shall provide the exclusive remedy for the award of statutory attorney's fees in all actions between insureds and insurers involving disputes arising under policies of insurance. Section 12–120, Idaho Code, shall not apply to any actions between insureds and insurers involving disputes arising under any policy of insurance.

Although the district court did not have the benefit of I.C. § 41–1839(4) when it awarded attorney fees to Union under § 12–120(3), a statute will be applied retroactively where there is a clear legislative intent to that effect. *Gailey v. Jerome County*, 113 Idaho 430, 432, 745 P.2d 1051, 1053 (1987) (citations omitted). In this case, the legislature has expressly stated its intent that "[t]his act shall apply to all cases pending at the time of its passage and approval." H.R. 713, 1996 S.L., ch. 385. For this reason, we reverse the district court's award of attorney fees under § 12–120(3), and deny Union's request for attorney fees on appeal under that provision.

### B. MSI's Request For Attorney Fees

MSI has also requested an award of attorney fees on appeal pursuant to I.C. § 12–

---

1. It is true that we have awarded attorney fees pursuant to I.C. § 41–1839 in declaratory judgment actions. *See Martin v. Argonaut Ins. Co.*, 91 Idaho 885, 434 P.2d 103 (1967) (action seeking declaratory relief as to coverage under a worker's compensation and employer's liability policy). The key distinction between *Martin* and the present case is that in *Martin*, the Court was asked to determine whether a specific and quantified loss was covered. *See Id.* at 897, 434 P.2d at 115 ("In the instant case, the [insured's] (Woods) liability to the claimant (Martin) has been adjudicated by the Industrial Accident Board...."). In the present case, we have been asked to determine whether there is coverage for the general type of damage alleged in the five underlying complaints, a damage that has yet to be, and indeed may never be, quantified or even proven. If this alleged damage is not established in the underlying actions, there will not be an amount "justly due" under the Seedsmen's policy. Consequently, it would be pure speculation at this point to award attorney fees under a statutory provision which expressly requires a refusal, on the part of an insurer, to pay an amount "justly due."

120(3). Because the legislature has declared that I.C. § 12–120 does not apply in this type of action, MSI's request is denied.

## XI.

### CONCLUSION

The district court's decision determining that Underwriters have a duty to defend is affirmed as to the five claims which have been filed against Union. The decision is reversed as to all of the other farmers allegedly damaged, for whom no claim has been asserted. The portion of the decision which determines that coverage is not excluded by the property damage exclusion is affirmed. We also affirm the district court's decision finding no breach of Condition 3(b) of the policy and dismissing Jones without prejudice. Finally, the portion of the district court's decision awarding fees to Union is reversed. Costs but not attorney fees are awarded to Union and MSI on appeal.

McDEVITT, C.J., and JOHNSON, SILAK and SCHROEDER, JJ., concur.