990 P.2d 1204

ALLSTATE INSURANCE COMPANY, an Illinois Corporation, Plaintiff–Respondent–Cross Respondent,

v.

Charmaine MOCABY, individually and as natural guardian of Marjorie Upton, a minor, Defendant–Appellant–Cross Respondent,

and

Lyman Jacobson and Isabel Jacobson, husband and wife, Cory Crystal, an individual, Defendants–Respondents–Cross Appellants.

Charmaine Mocaby, individually and as natural guardian of Marjorie Upton, a minor, Plaintiff–Appellant,

v.

Lyman Jacobson and Isabel Jacobson, husband and wife, Defendants–Respondents,

and

Cory Crystal, an individual, Tammy Walton, an individual and John Does I–V, Defendants.

Nos. 23849, 24087.

Supreme Court of Idaho, Pocatello, May 1999 Term.

Aug. 30, 1999.

Bob E. Pangburn, Caldwell, and D. Bernard Zaleha, Boise, for appellant. D. Bernard Zaleha argued.

D. Kirk Bybee, Pocatello, and Thomsen & Stephens, P.A., Idaho Falls, for respondents Lyman and Isabel Jacobson. D. Kirk Bybee and James D. Holman argued.

Hamlin & Sasser, Boise, for respondent Allstate Insurance Company. Geoffrey M. Wardle argued.

SILAK, Justice.

This is a consolidated appeal from orders granting summary judgment and attorney fees in a declaratory judgment action filed by an insurer and a tort action against the insureds, whose grandson shot the plaintiff with a handgun.

## I.

## FACTS AND PROCEDURAL BACKGROUND

Cory Crystal (Crystal), a minor and the maternal grandson of Lyman and Isabel Jacobson (Jacobsons), arrived in Pocatello to live with the Jacobsons on September 13, 1994. Prior to his arrival, Crystal was in the custody of the Washington Department of Health and Welfare. The Jacobsons were contacted by the Department and agreed to have Crystal live with them.

After arriving at the Jacobsons' home, Crystal spent two days with his grandparents and then left the house, staying with friends in Pocatello. Crystal would return to the Jacobsons' home intermittently for a shower, a change of clothing, and a meal.

However, he would again leave to be with his friends. On October 25, 1994, approximately one month after arriving in Pocatello, Crystal shot Marjorie Upton (Upton) in the head at her home with a pistol he had stolen from the home of Tammy Walton. Both Crystal and Upton's guardian, Charmaine Mocaby (Mocaby), maintain that the shooting was an accident. At the time of the shooting incident, the Jacobsons had in effect a Deluxe Homeowners Insurance Policy issued by Allstate Insurance Co. (Allstate), which provided coverage for residents of the Jacobsons' household.

On July 31, 1996, Allstate filed a declaratory judgment action against the Jacobsons, Crystal, Upton, and Mocaby seeking a declaration that Allstate had no duty to defend or indemnify the Jacobsons or Crystal in lawsuits relating to the shooting incident. On October 24, 1996, Mocaby sued the Jacobsons, Crystal, and Tammy Walton on grounds of negligence and negligent supervision.

On January 23, 1997, Allstate filed a motion for summary judgment in the declaratory judgment action, asserting that Crystal was not a "resident" of the Jacobsons' household, and that even if he were a resident, the intentional/criminal act exclusion clause in the policy precluded coverage for Crystal and the Jacobsons. On February 10, 1997, the Jacobsons filed a motion to dismiss or in the alternative, motion for summary judgment, asserting that Allstate had a duty to defend and indemnify the Jacobsons in Mocaby's negligent supervision action against them. The district court granted Allstate's motion for summary judgment, ruling that Crystal was not a resident of the Jacobsons' household under the insurance policy and that even if Crystal were a resident, his actions would fall within the criminal act exclusion of the policy. The Jacobsons filed a motion to alter or amend and for reconsideration, and the district court issued an amended decision and order granting Allstate's motion for summary judgment in part, holding that Crystal was not a resident under the insurance policy but that Allstate had a duty to defend and

indemnify the Jacobsons in Mocaby's negligent supervision action. Mocaby appealed.

On April 30, 1997, the Jacobsons filed a motion for summary judgment in Mocaby's negligent supervision action, asserting that they were neither the appointed nor de facto guardians of Crystal at the time of the shooting. The Jacobsons further asserted that even if they were found to be Crystal's guardians, they could not be held responsible for his actions. The district court granted the Jacobsons' motion, determining that while the Jacobsons voluntarily assumed responsibility for Crystal, there was no genuine issue of material fact regarding whether the Jacobsons knew that Crystal had a proclivity or propensity to shoot someone. The district court further concluded that Mocaby's suit was brought frivolously, unreasonably, and without foundation and accordingly awarded costs and attorney fees in favor of the Jacobsons pursuant to I.C. § 12–121 and I.R.C.P. 54(e)(1) in the amount of $2,188.50. Mocaby also appealed from this order.

In July, 1997, the Jacobsons filed a motion for an award of fees and costs incurred in defending Allstate's declaratory judgment action. Allstate likewise filed a motion for an award of attorney fees and costs against the Jacobsons and against Mocaby. The district court denied the Jacobsons' motion but granted Allstate's motion against Mocaby pursuant to Section 12–121 of the Idaho Code and I.R.C.P. 54(e)(1). The district court ordered Mocaby to pay $11,662.05 in attorney fees and costs. The Jacobsons and Mocaby appealed from this order. The appeals from the declaratory judgment action and the negligent supervision claim were consolidated.

## II.

### ISSUES ON APPEAL

The appellant presents the following issues on appeal:

A. Whether the district court erred in determining that Crystal was not a resident of the Jacobsons' household and thus not an insured person under the Jacobsons' homeowner's insurance policy.

B. Whether the district court erred in applying the insurance policy's criminal act exclusion in this case.

C. Whether the district court erred in determining that the Jacobsons were not negligent in their supervision of Crystal.

D. Whether the district court erred in awarding $11,009.00 in attorney fees to Allstate.

On cross-appeal the Jacobsons and Crystal present the following issue:

E. Whether the district court erred in determining that the Jacobsons were not entitled to an award of attorney fees against Allstate.

## III.

### STANDARD OF REVIEW

In an appeal from an order granting summary judgment, this Court applies the same standard of review as used by the district court when originally ruling on the motion. *See Mitchell v. Bingham,* 130 Idaho 420, 422, 942 P.2d 544, 546 (1997). Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *See id.* This determination is to be based on the "pleadings, depositions, and admissions on file, together with the affidavits, if any." *Id.* (quoting I.R.C.P. 56(c)). However, the Court should liberally construe the facts in favor of the party opposing the motion, together with all reasonable inferences from the evidence. *See id.*

In order to create a genuine issue of material fact, the party opposing the motion must present more than a conclusory assertion that an issue of fact exists. *See Van Velson Corp. v. Westwood Mall Assoc.,* 126 Idaho 401, 406, 884 P.2d 414, 419 (1994). Rather, "the plaintiff must respond to the summary

judgment motion with specific facts showing there is a genuine issue for trial." *Tuttle v. Sudenga Indus., Inc.*, 125 Idaho 145, 150, 868 P.2d 473, 478 (1994). However, "if a party moving for summary judgment raises issues in his motion but then fails to provide any evidence showing a lack of any genuine issue of material fact with respect to those issues, the nonmoving party has no burden to respond with supporting evidence." *Thomson v. Idaho Ins. Agency, Inc.*, 126 Idaho 527, 531, 887 P.2d 1034, 1038 (1994) (citing *Thompson v. Pike*, 122 Idaho 690, 698, 838 P.2d 293, 301 (1992)). Further, summary judgment is appropriate where the non-moving party bearing the burden of proof fails to make a showing sufficient to establish the existence of an element essential to that party's case. *See Harris v. Dep't of Health and Welfare*, 123 Idaho 295, 298, 847 P.2d 1156, 1159 (1993).

## IV.

## ANALYSIS

### A. The District Court Correctly Determined That Crystal Was Not A Resident Of The Jacobsons' Household.

Mocaby appeals from the district court's order granting Allstate's motion for summary judgment in the declaratory judgment action. Specifically, Mocaby argues that the district court erred in determining that Crystal was not a resident of the Jacobsons' household and thus not an insured person under the Jacobsons' homeowner's insurance policy.

The homeowner's insurance policy issued by Allstate to the Jacobsons provides in part:

**Losses We Cover Under Coverage X:**

Subject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy.

Mocaby argues that Crystal was an "insured person" under the Jacobsons' policy. The policy includes the following definition:

"Insured person(s)"—means you and, if a *resident* of your household:

a) any relative; and

b) any dependent person in your care.

While it is undisputed that Crystal is a relative of the Jacobsons, the policy does not define "resident." Mocaby asserts that Crystal was indeed a resident of the Jacobsons' household and thus an "insured person" under the policy.

Insurance policies are contracts of adhesion, not typically subject to negotiation between the parties, and any ambiguity must be construed most strongly against the insurer. *See Kromrei v. AID Ins. Co.*, 110 Idaho 549, 551, 716 P.2d 1321, 1323 (1986) (citing *Moss v. Mid–American Fire & Marine Ins.*, 103 Idaho 298, 300, 647 P.2d 754, 756 (1982)). Where language in an insurance policy is clear and unambiguous, "coverage must be determined in accordance with the plain meaning of the words used." *North Pac. Ins. Co. v. Mai*, 130 Idaho 251, 253, 939 P.2d 570 (1997) (quoting *Mutual of Enumclaw Ins. Co. v. Roberts*, 128 Idaho 232, 235, 912 P.2d 119, 122 (1996)). A provision in an insurance policy is ambiguous if it is reasonably subject to conflicting interpretations. *See City of Boise v. Planet Ins. Co.*, 126 Idaho 51, 55, 878 P.2d 750, 754 (1994). When confronted with ambiguous language in an insurance contract, the court must determine what a reasonable person would have understood the language to mean. *See Mutual of Enumclaw*, 128 Idaho at 235, 912 P.2d at 122 (1996) (citing *AID Ins. Co. v. Armstrong*, 119 Idaho 897, 900, 811 P.2d 507, 510 (Ct.App. 1991)).

Allstate acknowledges that the term "resident" is ambiguous but argues that under the particular circumstances in this case, even when construing the policy against Allstate, no reasonable interpretation of the phrase "resident of your household" permits an extension of coverage to Crystal. This Court has not previously addressed this particular issue, but the Court of Appeals decision in *AID Insurance Co. v. Armstrong*, 119 Idaho 897, 811 P.2d 507 (Ct.App.1991) is instructive.

In *Armstrong*, a minor daughter of divorced parents accidentally shot another minor in the eye with a gun shortly after moving in with her father and stepmother. *See Armstrong*, 119 Idaho at 899, 811 P.2d at 509. The injured minor sought coverage from the insurer of her mother and stepfather, AID Insurance Company. *See id.* The Court of Appeals affirmed the district court's finding that the minor daughter was not an insured at the time of the accident because she was not a resident of the household. *See id.* at 903, 811 P.2d at 513.

The court in *Armstrong* stated: "[w]hether a person is a resident of a particular place is to be determined from all the facts of each particular case, not from the facts viewed in isolation from one another." 119 Idaho at 901, 811 P.2d at 511. Generally, the term "resident" connotes a living arrangement with some degree of permanence, while "household" has been defined as residents who dwell under the same roof and compose a family. *See id.* In determining whether the minor in *Armstrong* was a resident of the household of her mother and stepfather at the time of the accident, the court considered several factors: the individual's storage of personal belongings in the named insured's household; custody arrangements for the minor; the presence or absence of a close continuing connection between the individual and the named insured; the presence of a bedroom kept for the individual to return to; the frequency of the individual's visits to the household; and the intent of the named insured with respect to the individual's residence. *See Armstrong*, 119 Idaho at 901–03, 811 P.2d at 511–13.

 In this case, the undisputed facts established on the motion for summary judgment are as follows: although Crystal originally moved to Pocatello to live with the Jacobsons, the record demonstrates that neither Crystal nor the Jacobsons considered Crystal a resident at the time of the shooting. The record demonstrates that Crystal, in coming to Pocatello, did not intend to live with the Jacobsons. In a statement to an Allstate investigator, Crystal stated:

I haven't lived with my mom, grandma or anybody I've lived on my own for a long time and when they sent me down I had it in my mind that I wasn't even going to live with them, I was just going to hang out with my friends cause I knew a few friends down there.

Crystal also stated that "I just thought that I would make some money and just be hustling and leave probably go back to Seattle after I made some money." The record also reveals that Crystal had been staying with friends at the time of the shooting. Thus, at the time of the shooting, Crystal was not living with the Jacobsons.

While the Jacobsons originally intended to have Crystal live with them, from the time Crystal arrived in September, 1994, to the time of the shooting incident on October 25, 1994, as stated in Isabel Jacobson's affidavit, the Jacobsons did not believe that Crystal resided with them. During that time, Crystal stayed with them infrequently. Crystal would occasionally come to the Jacobsons' home to take a bath, change his clothes, or eat, but would immediately leave again.

Crystal did receive some mail at the Jacobsons' address, and he did receive some money from his grandparents when he would stop in. After the shooting, Crystal gave the police his grandparents' address, but he stated that he did so in order to avoid being immediately sent to juvenile hall. Crystal spent two nights at his grandparents' after the shooting though he again left prior to his arrest and detention. Although these facts show that Crystal had some connection to the Jacobsons' household, it is apparent that Crystal did not have a close, continuing connection with the Jacobsons. In light of the facts and circumstances of this case, we hold that the district court correctly ruled as a matter of law that the undisputed facts established that Crystal was not a resident of the Jacobsons' household at the time of the shooting incident. Therefore, Crystal is not an insured person entitled to coverage under the homeowner's insurance policy issued to the Jacobsons by Allstate. Accordingly, we

hold that the district court did not err in granting Allstate's motion for summary judgment.

## B. It Is Unnecessary To Address Whether The District Court Erred In Applying The Criminal Act Exclusion In This Case.

Since Crystal was not a resident of the Jacobson's household and thus not an insured person under the Jacobsons' homeowner's insurance policy, it is unnecessary for the Court to address whether the district court erred in holding that the criminal act exclusion in the Jacobsons' homeowner's insurance policy applies in this case.

## C. The District Court Correctly Ruled That The Jacobsons Were Not Liable For The Negligence Of Crystal.

On June 18, 1997, the district court granted summary judgment in favor of the Jacobsons in Mocaby's negligent supervision action. Mocaby argues that the district court erred in failing to find that the Jacobsons were negligent in their supervision of Crystal. Mocaby contends that the Jacobsons, upon taking Crystal into their home, owed a duty to the citizens of Pocatello to exercise some level of control over him.

In *Sterling v. Bloom*, 111 Idaho 211, 723 P.2d 755 (1986), the Court held that the state could be held liable for a parole officer's negligent supervision of a parolee.[1] *See id.* at 225, 723 P.2d at 769. In *Fuller v. Studer*, 122 Idaho 251, 833 P.2d 109 (1992), the Court extended the *Sterling* rationale to the parent-child context. The Court stated:

> The most informative case in Idaho concerning negligent supervision is *Sterling v. Bloom*, 111 Idaho 211, 723 P.2d 755 (1986), where this Court held that the State can be held liable for parole officer's negligent supervision of a parolee. In *Sterling* we stated that "one who takes charge of a

third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." *Sterling,* 111 Idaho at 225, 723 P.2d at 769.

*Id.* at 255, 833 P.2d at 113; *see also* RESTATEMENT (SECOND) OF TORTS § 319 (1965).

We decline to extend parent-child supervisorial liability to include persons such as the Jacobsons who do not have legal custody of the minor. There is no evidence in the record that the Jacobsons had been awarded legal custody of Crystal. Rather, the undisputed facts show that the Jacobsons as grandparents were rendering voluntary assistance to a member of their family in a time of need.

Accordingly, we affirm the ruling of the district court that the Jacobsons did not have liability for the conduct of Crystal.

## D. The District Court Erred In Awarding $11,009 In Attorney Fees To Allstate.

Mocaby also appeals from a July 24, 1997 order in which the district court granted Allstate's motion for attorney fees and costs against Mocaby pursuant to I.C. § 12–121 and I.R.C.P. 54(e)(1). The district court based its decision to award attorney fees on its finding that Mocaby's negligent supervision action was brought and pursued frivolously, unreasonably and without foundation.

Allstate first asserts that Mocaby failed to file a timely objection to its motion for an award of attorney fees, thereby waiving a right to object. I.R.C.P. 54(d)(6) provides, in relevant part:

**Objection to costs.**

Any party may object to the claimed costs of another party set forth in a memorandum of costs by filing and serving on ad-

---

1. The legislature has since granted governmental entities immunity from negligent supervision claims. *See* I.C. § 6–904A; *Harris v. Dept. of* *Health & Welfare,* 123 Idaho 295, 301, 847 P.2d 1156, 1162 (1992).

verse parties a motion to disallow part or all of such costs within fourteen (14) days of service of the memorandum of costs.... Failure to timely object to the items in the memorandum of costs shall constitute a waiver of all objections to the costs claimed.

The rule clearly provides that the failure to file a timely objection to costs and fees claimed in the memorandum of costs constitutes a waiver of objections to the costs claimed. *See Conner v. Dake,* 103 Idaho 761, 653 P.2d 1173 (1982).

■ Allstate claims that it served and filed its motion for attorney fees and costs with its memorandum of costs and fees on July 11, 1997. It bases this claim on a handwritten note at the top of the memorandum which says: "Fax filed Bannock Cty Clerk's Office 11:31 A.M. 7/11/97." Although the certificate of service is also dated July 11, 1997, the facsimile time-stamp appearing at the top of each page of the memorandum bears the date of July 23, 1997. More importantly, the memorandum lacks any kind of filing stamp by the clerk of the district court. Moreover, while the filing stamp on Mocaby's objection to Allstate's motion for attorney fees is dated July 30, 1997, the objection and certificate of service are dated July 25, 1997. The circumstances are further confused by the district court's granting of Allstate's motion for attorney fees on July 23, 1997, which, if Allstate filed its memorandum on July 11, 1997, was prior to the deadline for filing an objection to Allstate's motion. At oral argument, counsel for Allstate was unable to explain the reasons for these inconsistencies and could not verify that the memorandum was in fact filed with the district court on July 11, 1997. Because we are unable to determine from the record when the memorandum was filed, we deem the objection timely.

■ Because Mocaby did not waive her right to object to the attorney fee award in favor of Allstate, we next consider Mocaby's assertion that the district court erred in awarding attorney fees to Allstate pursuant to I.C. § 12–121 and I.R.C.P. 54(e)(1). An award of attorney fees pursuant to I.C. § 12–121 is discretionary and is subject to review and vacation only upon a showing of an abuse of discretion. *See Zaleha v. Rosholt, Robertson & Tucker, Chtd.,* 131 Idaho 254, 257, 953 P.2d 1363, 1366 (1998); *Savage Lateral Ditch Water Users Ass'n v. Pulley,* 125 Idaho 237, 250, 869 P.2d 554, 567 (1993). Section 12–121 provides in part: "In any civil action, the judge may award reasonable attorney's fees to the prevailing party...." However, I.R.C.P. 54(e)(1) limits the discretion of the court to award attorney fees under this section by providing that "attorney fees under section 12–121, Idaho Code, may be awarded by the court only when it finds, from the facts presented to it, that the case was brought, pursued or defended frivolously, unreasonably or without foundation."

■ In its July 24, 1997 order awarding attorney fees to Allstate, the district court stated:

> This is an extremely litigious society; however, counsel have the obligation, prior to filing a lawsuit, to fully investigate the facts and legal basis/authority on which the suit will be based. Once a lawsuit is filed, defendants obviously have to incur legal expenses to defend same.... [T]his court concludes the attorney fees requested in the sum of $11,009.00, were reasonable and necessarily incurred in the defense of this matter.

It is noteworthy that it was Allstate that filed the declaratory judgment action in which the award of attorney fees was rendered against Mocaby. Therefore, Allstate did not "defend" the action as the district court stated. Moreover, Mocaby's legal arguments to support her action for negligent supervision should not be found to be so plainly fallacious and without merit as to be deemed frivolous; rather, Mocaby's claim is supported by a good faith argument for the extension or modification of the law in Idaho. Therefore, we hold that the district court abused its discretion in awarding attorney fees to Allstate under I.C. § 12–121 and I.R.C.P. 54(e)(1).

**E. The District Court Was Correct In Determining That The Jacobsons Were Not Entitled To An Award Of Attorney Fees Against Allstate.**

On cross-appeal, the Jacobsons argue that the district court erred in denying their motion for an award of attorney fees and costs incurred in defending the declaratory judgment action filed by Allstate. The Jacobsons argue that an award of attorney fees is proper pursuant to Section 41–1839 of the Idaho Code, Section 10–1201 of the Idaho Code (Uniform Declaratory Judgment Act), and the general equitable powers of the Court.

 I.C. § 41–1839(4) of the Idaho Code provides:

Notwithstanding any other provision of statute to the contrary, [I.C. § 41–1839] and section 12–123, Idaho Code, shall provide the exclusive remedy for the award of statutory attorney's fees in all actions between insureds and insurers involving disputes arising under policies of insurance. Provided, attorney's fees may be awarded by the court when it finds, from the facts presented to it that a case was brought, pursued or defended frivolously, unreasonably or without foundation. Section 12–120, Idaho Code, shall not apply to any actions between insureds and insurers involving disputes arising under any policy of insurance.

I.C. § 41–1839. The plain terms of this provision limit the availability of an attorney fees award in this case to the application of I.C. § 41–1839 and I.C. § 12–123. The Jacobsons accordingly cannot properly seek an award of attorney fees under I.C. § 10–1201, and they did not assert a claim under I.C. § 12–123. Further, in Idaho the award of attorney fees is statutory, and accordingly the exercise of a court's equitable powers to award fees is not appropriate. *See Rohr v. Rohr,* 128 Idaho 137, 143–44, 911 P.2d 133, 139–40 (1996); *McCoy v. State, Dept. of Health & Welfare,* 127 Idaho 792, 796, 907 P.2d 110, 114 (1995).

Section 41–1839 of the Idaho Code further provides:

(1) Any insurer issuing any policy, certificate or contract of insurance, surety, guaranty or indemnity of any kind or nature whatsoever, which shall fail for a period of thirty (30) days after proof of loss has been furnished as provided in such policy, certificate or contract, to pay to the person entitled thereto the amount justly due under such policy, certificate or contract, shall in any action thereafter brought against the insurer in any court in this state for recovery under the terms of the policy, certificate or contract, pay such further amount as the court shall adjudge reasonable as attorney's fees in such action.

(2) In any such action, if it is alleged that before the commencement thereof, a tender of the full amount justly due was made to the person entitled thereto, and such amount is thereupon deposited in the court, and if the allegation is found to be true, or if it is determined in such action that no amount is justly due, then no such attorney's fees may be recovered.

I.C. § 41–1839. The availability of attorney fees under I.C. § 41–1839 in a declaratory judgment action filed by an insurer was recently addressed by this Court in *Northland Insurance, Co. v. Boise's Best Autos & Repairs,* 131 Idaho 432, 958 P.2d 589 (1998). In *Northland,* an insurer filed a declaratory judgment action seeking a declaration of its rights and obligations in connection with the insurance policy contract entered into with the insured. The Court in *Northland* held that the insured was not entitled to attorney fees pursuant to I.C. § 41–1839 because the insured did not provide evidence of an amount "justly due" as required by I.C. § 41–1839(1). *See Northland,* 131 Idaho at 434, 958 P.2d at 591. The Court in *Northland* relied on *Union Warehouse and Supply Co. v. Illinois R.B. Jones, Inc.,* 128 Idaho 660, 917 P.2d 1300 (1996), a case where an insured brought a declaratory judgment action against the insurer even though no claim had yet been filed against the insured. The Court in *Union Warehouse* held that the insured was not entitled to attorney fees

under I.C. § 41–1839 because the insured "presented no evidence establishing that [the insurer] ha[d] failed to pay a specific amount 'justly due' under the ... policy, a distinct statutory requirement." 128 Idaho at 669, 917 P.2d at 1309.

In this case, Allstate brought the declaratory judgment action to determine if Crystal was covered under the insurance policy issued to the Jacobsons. Allstate provided a defense to the Jacobsons in Mocaby's negligent supervision action, and Allstate has not failed to pay an amount justly due under the terms of the policy.

The Jacobsons also argue under I.C. § 41–1839(4) that an award of attorney fees is justified based on their allegation that Allstate's declaratory judgment action was brought and pursued frivolously, unreasonably or without foundation. The Jacobsons point out that Allstate's declaratory judgment action against them was filed approximately six months before Mocaby's complaint was filed against the Jacobsons. However, the Court has previously recognized that an insurer may properly seek declaratory relief where the insurer believes that the policy itself provides a basis for noncoverage provided the insurer fulfills its duty to defend the insured. *See Kootenai v. The Western Casualty and Surety Co.*, 113 Idaho 908, 910–11, 750 P.2d 87, 89–90 (1988) (quoting *State v. Bunker Hill Co.*, 647 F.Supp. 1064, 1068 (D.Idaho 1986)). Although Allstate filed its declaratory judgment action before Mocaby filed a complaint against the Jacobsons, Allstate provided the Jacobsons a defense soon after Mocaby's complaint was filed. Because Allstate reasonably believed that the policy itself provided a basis for noncoverage, Allstate's actions cannot be characterized as frivolous or unreasonable in this case. Therefore, an award of attorney fees under I.C. § 41–1839 is not justified in this case. Accordingly, we hold that the district court did not err in denying the Jacobsons' motion for attorney fees and costs.

## V.

### CONCLUSION

We affirm the district court's order granting Allstate's motion for summary judgment. We also affirm the district court's order granting the Jacobsons' motion for summary judgment. The district court's order denying the Jacobsons' motion for attorney fees against Allstate, and granting Allstate's motion for attorney fees against Mocaby is affirmed in part and reversed in part. No attorney fees or costs are awarded on appeal.

Chief Justice TROUT, Justices SCHROEDER, WALTERS and KIDWELL, concur.