997 P.2d 609

**Katrina WENSMAN and Carrie Ann Coen, Plaintiffs–Respondents,**

v.

**FARMERS INSURANCE COMPANY OF IDAHO, an Idaho corporation, Defendant–Appellant.**

No. 24634.

Supreme Court of Idaho, Lewiston, October 1999 Term.

March 29, 2000.

___

Knowlton, Miles, Merica & Kovis, Lewiston, for appellant. Manderson L. Miles, Jr., argued.

Aherin, Rice & Anegon, Lewiston, for respondents. Darrel W. Aherin argued.

TROUT, Chief Justice.

This case involves attorney fees and the subrogation claim of an insurance company. The appellant, Farmers Insurance Company (Farmers) claims it should not have to pay the insureds' attorney for collecting the insurance subrogation claim when Farmers specifically told the attorney it did not want the attorney's assistance in collecting that claim. The district judge granted summary judgment for the insureds and Farmers now appeals that decision.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 20, 1994, Katrina Wensman (Wensman) was involved in an automobile accident with Chad Christopherson (Christopherson). Christopherson was clearly at fault and liability was not disputed. At the time of the accident, Wensman was insured by Farmers and Christopherson was insured by State Farm Mutual Automobile Insurance Company (State Farm). Carrie Ann Coen (Coen) was a passenger in Wensman's vehicle at the time of the accident.

To aid in recovering against State Farm, Wensman and Coen hired attorney Darrel Aherin (Aherin) to represent them on a 25% contingency fee agreement. On September 19, 1994, Aherin filed a proof of loss with Farmers for damages from the accident. Farmers ultimately paid Wensman a total of $1,890.29 and Coen $1,334.30 for medical expenses. Additionally, in October of that year, Farmers notified Aherin that: (1) Farmers did not want Aherin's assistance in collecting its subrogation claim from State Farm; (2) Farmers was not going to waive any of its rights under the policy; and (3) Farmers had a subrogation claim in the event of a settlement.

In November of 1994, State Farm replied to an inquiry from Farmers, acknowledging Farmers' subrogation claim for medical bills that were reasonable and necessary. Farmers corresponded with State Farm in January of 1995 and inquired into the status of a settlement and whether State Farm had processed Farmers' subrogation claim. On March 21, 1995, Farmers again wrote to State Farm inquiring about the status of the subrogation claim. The same letter was sent to State Farm in May and August.

In October of 1995, Farmers made the same inquiry, but this time it added a request that upon settlement a separate check be made out to Farmers with no reference to Aherin. Farmers added, "[w]e did not hire this attorney to handle our medical subrogation claim." Farmers further stated that if Aherin's name appeared on the check, Farm-

ers would file for arbitration because its rights would not be protected.

In December of 1995, and in January, April and May of 1996, Farmers repeated its letters to State Farm inquiring into the status of its subrogation claim. On June 20, 1996, a Farmers' claims processor had a telephone conversation with a State Farm claims representative regarding the running of the statute of limitations on Farmers' subrogation claim. In a letter from Farmers to State Farm dated the same day, Farmers requested that State Farm "protect our subrogation interest after the two year statute runs ... which would eliminate the need to file deferment through Arbitration." On June 24, 1996, a State Farm claims representative signed Farmers' request and returned it to Farmers, acknowledging that State Farm would protect Farmers' subrogation claim after the running of the statute of limitations.

On July 25, 1996, Aherin wrote to Farmers to inform it of the settlement offer made to Coen for $12,000. In the letter, Aherin requested that Farmers waive its subrogation claim so Coen could be "made whole." Aherin also claimed that since the "intercompany arbitration agreement" was not disclosed to the insured, then neither Wensman nor Coen were bound by the agreement. Finally, Aherin noted that "State Farm demands a full release ... for the case to be settled." Aherin then repeated the letter on July 29 for Wensman's $10,000 settlement offer.

Farmers replied in July 1996, and agreed that Coen was an insured under the policy, but that as such, Coen was bound by Farmers' subrogation rights in the policy. Further, Farmers reasserted its right to subrogation and explained that it had no intent of waiving those rights. Farmers repeated the letter for Wensman on August 7, 1996.

On October 17, 1996, Wensman and Coen signed a settlement release with State Farm. The settlement provided for Wensman to receive $10,000 and Coen to receive $12,000. On October 25, 1996, Aherin sent two checks to Farmers, one made to Wensman/Farmers, and the other to Coen/Farmers, for the amounts of subrogation. Aherin requested that Farmers endorse the checks and then return them so that Wensman and Coen could endorse the checks. Aherin would then withhold his 25% fees and return the balance to Farmers. The attorney fees were $472.57 for Wensman and $333.57 for Coen. Farmers responded by returning the checks unsigned and added that Aherin was not entitled to any attorney fees for the subrogated amounts.

Aherin filed for a declaratory judgment against Farmers in December of 1996. In the complaint, Aherin alleged that he was entitled to attorney fees from Farmers because he had a contract with Wensman and Coen for 25% of their total recovery. Aherin also asserted that it was unfair to allow Farmers to benefit from the settlement without having to pay a proportionate share of the costs incurred in obtaining the settlement.

On December 30, 1996, Farmers requested that its attorney respond to the complaint. Farmers' attorney moved the district judge for summary judgment and dismissal on March 21, 1997. In its motion for summary judgment, Farmers sought to enforce the subrogation clause contained in the policy. Farmers further claimed it had informed Aherin that Farmers did not want his efforts in recovering its subrogation claims from State Farm.

In May of 1997, the district judge denied Farmers' motion for summary judgment and dismissal. The district judge ruled that, drawing all inferences in favor of Wensman and Coen, Farmers was not entitled to summary judgment because of the application of the "fund doctrine." The district judge held that while he could not determine how much effort was necessary for an insurer to avoid the fund doctrine, he could not, as a matter of law, find that Farmers had done enough in this case. The judge found that it was "necessary to assess whether Farmers participated in and benefited from creation of the fund."

On June 18, 1997, Aherin filed a motion for summary judgment on behalf of Wensman and Coen, supported by an affidavit of Aherin. This affidavit provided a specific summary of the actions taken by Aherin in pur-

suit of the settlement with State Farm. The affidavit also included all correspondence with Farmers regarding the subrogation claim.

After a hearing on September 4, 1997, the district judge denied Wensman and Coen's motion for summary judgment on September 17, 1997. In its opinion and order, the district judge again set forth the requirements needed to prevail on a fund doctrine theory and concluded that "a genuine issue of material fact exists on whether Farmers benefited" from the creation of the fund.

Following both parties' motions to reconsider, and additional affidavits from both parties, the district judge issued his third opinion and order on January 26, 1998, granting Wensman and Coen's motion, and finding that the State Farm claims representative had relied upon the information gained from Aherin's prosecution of the case. The judge found that "Farmers admittedly did nothing to create the fund from which it can recover the subrogated amounts, and based on [the claims representative's] testimony benefited from the creation of that fund which was based in significant part on Plaintiffs' efforts." The district judge then held that Wensman and Coen could deduct a proportionate share of attorney fees from the subrogated amounts to be paid to Farmers. This appeal then followed.

## II.

### STANDARD OF REVIEW

■ On appeal from the grant of a motion for summary judgment, this Court employs the same standard as used by the district judge originally ruling on the motion. *McKay v. Owens,* 130 Idaho 148, 152, 937 P.2d 1222, 1226 (1997). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). This Court liberally construes all disputed facts in favor of the non-moving party, and draws all reasonable inferences and conclusions supported by the record in favor of the party opposing

the motion. *Bonz v. Sudweeks,* 119 Idaho 539, 541, 808 P.2d 876, 878 (1991). If reasonable people could reach different conclusions or draw conflicting inferences from the evidence, the motion must be denied. *Id.* However, if the evidence reveals no disputed issues of material fact, the trial court should grant the motion for summary judgment. *Farm Credit Bank v. Stevenson,* 125 Idaho 270, 272, 869 P.2d 1365, 1367 (1994).

## III.

### DISCUSSION

Farmers argues the district judge erred in granting summary judgment to Wensman and Coen on two grounds. First, Farmers argues the "common fund doctrine" should not have been applied in this case because Farmers told Aherin it did not want his help in pursuing its subrogation claims. Secondly, Farmers argues that even if the "common fund doctrine" is applicable to this case, the district judge erred in granting summary judgment because Aherin has not shown his actions caused State Farm to pay the subrogation claim.

### A. The "Common Fund Doctrine" Applies.

The "common fund doctrine" was first recognized in Idaho in 1959. That year, in the case of *Cedarholm v. State Farm,* 81 Idaho 136, 338 P.2d 93 (1959), this Court held when an insured hires an attorney in order to pursue a claim against the tortfeasor and the eventual settling of that claim results in the creation of a fund from which the insurance company benefits, the insurance company must pay a proportionate amount of the cost incurred in the creation of that fund. We stated the rule as follows:

> The general rule is that the insured may retain out of the fund recovered from the wrongdoer, after the payment of the policy, the costs and reasonable expenses incurred in the litigation, for it would be unjust to require him to incur expenses for the recovery of money for the benefit of

the insurer, without being allowed to reimburse himself.

*Id.* at 142, 338 P.2d at 96.

In 1989, we again addressed the "common fund doctrine." In *Miner v. Farmers Insurance Co.,* 116 Idaho 656, 778 P.2d 778 (1989), we addressed the question of whether an insurance company is required to pay attorney fees incurred by its insureds in collecting the insurance company's subrogated amount when the insureds did not notify the insurer they had employed an attorney to collect the subrogated interest. In answering this question, we held that notice to the insurer was necessary before the insurer was required to pay a proportionate share of the attorney fees. *See id.* at 659, 778 P.2d at 781. In so holding, we emphasized that "[t]imely notice is required to give the holder of a subrogated interest the right to join the action and to be represented by legal counsel of its own choosing if it so elects." *Id.* at 658–59, 778 P.2d at 780–81 (quoting *State Farm Mut. Auto. Ins. Co. v. Geline,* 48 Wis.2d 290, 179 N.W.2d 815, 821 (1970)).

 In the present case, Farmers argues our holding in *Miner* that an insurance company cannot be made to pay a proportionate share of attorney fees without notice the claim is being asserted, necessitates the finding that an insurance company can refuse the services of an insured's attorney and thereby avoid paying a proportionate share. On the contrary, our holding in *Miner* did not address the question of whether the insurance company must consent to the attorney's actions on its behalf. Rather, we held only that notice is required so an insurance company can decide whether it desires to participate in the action on its own behalf. If so, then each party would bear its own costs in the action. If the insurer declines to participate in the action, it is on notice that it will be required to pay a proportionate share of the attorney fees out of any money recovered on its behalf. This principle was succinctly stated by the Washington Supreme Court in *Mahler v. Szucs,* 135 Wash.2d 398, 957 P.2d 632 (1998) (en banc). In *Mahler,* the Washington court held:

> Consent to counsel by the benefited party is not required in common fund cases. If consent were required, there would be no common fund rule at all. Thus if [the insurer] wishes to receive the benefit of the fund [the insureds] recovered, it must share the expenses of recovering those funds. No attorney/client relationship is necessary, so long as the efforts of the attorney were a benefit to the common fund. Again the proper focus is on the benefit to [the insurer].

*Id.* at 648. We agree with the rationale of the Washington Supreme Court. Indeed, a requirement that the insurance company consent to the efforts of the attorney would essentially eliminate the fund doctrine by allowing insurance companies to refuse the service of the attorney and then sit back and do relatively little to collect their subrogated amounts, knowing they would ultimately collect those amounts from any settlement without having to pay a proportionate share of the costs of that settlement. Therefore, we hold the district judge properly applied the "common fund doctrine" to this case despite the fact that Farmers did not consent to Aherin's efforts to obtain the subrogated amounts.

## B. The District Judge Erred in Granting Summary Judgment to Wensman and Coen.

 Farmers also argues that the district judge erred in granting summary judgment to Wensman and Coen because there is, at best, a genuine issue of material fact relating to the question of whether Aherin's actions actually resulted in any benefit to Farmers. We agree this case is not appropriate for summary judgment. A review of the record reveals credible evidence State Farm made the decision to pay the subrogation claim prior to any effort by Aherin. The affidavit submitted by the State Farm claims adjuster specifically states that Aherin's efforts did not affect her decision to pay Farmers' subrogation claim. Because we must construe the facts most favorably to the non-moving party, we believe this evidence is sufficient to create a genuine issue as to whether Farmers actually benefited from Aherin's efforts. Therefore, we reverse the district judge's

grant of summary judgment to Wensman and Coen.

### C. Attorney Fees on Appeal

Wensman and Coen argue they are entitled to attorney fees on appeal under I.C. § 41–1839. This provision provides that:

> Any insurer issuing any policy ... which shall fail for a period of thirty (30) days after proof of loss has been furnished as provided in such policy ... to pay to the person entitled thereto the amount justly due under the policy ... shall in any action thereafter brought against the insurer in any court in this state for recovery under the terms of the policy ... pay such further amount as the court shall adjudge reasonable as attorney's fees in such action.

I.C. § 41–1839(1) (1998). Our cases have held this provision applies only when (1) the insured has provided proof of a covered loss; (2) the insurer has failed to pay an amount justly due under the policy within thirty days of the proof of loss; and (3) the insured is thereafter compelled to bring suit to recover for the loss. *See Union Warehouse and Supply Co., Inc. v. Illinois R.B. Jones, Inc.*, 128 Idaho 660, 668–69, 917 P.2d 1300, 1308–09 (1996); *Hansen v. State Farm Mut. Auto. Ins. Co.*, 112 Idaho 663, 671, 735 P.2d 974, 982 (1987). Clearly, those elements have not been met in this case. It is undisputed that Farmers promptly paid all amounts due under the policy to both Wensman and Coen. Therefore, since Wensman and Coen were never "compelled to bring suit to recover for the loss," I.C. § 41–1839(1) does not apply and Wensman and Coen are not entitled to attorney fees for this appeal.

### IV.

### CONCLUSION

For the foregoing reasons we affirm in part and reverse in part the district judge's decision in this case, and remand this case for further proceedings. We award costs, but not attorney fees, to respondents.

Justices SILAK, SCHROEDER, and WALTERS, concur.

Justice KIDWELL, Specially Concurring.

Because the majority finds that there is still an issue of material fact to be decided, I specially concur in the opinion. It is clear that summary judgment should not have been granted because the district court failed to construe the facts most favorably to the non-moving party as is required under the applicable standard of review. There is evidence in the record that State Farm made the decision to pay the subrogated claim before any effort had been expended by the attorney. The affidavit of the claims adjuster specifically states that nothing the attorney did affected her decision to pay the claim. This factual dispute makes it clear that summary judgment should not have been granted.

I believe that the majority opinion misinterprets the case of *Miner v. Farmers Insurance Co.*, 116 Idaho 656, 778 P.2d 778 (1989). In *Miner*, State Farm followed its usual procedure of sending two checks to the plaintiff upon reaching a settlement, one check to the plaintiffs and their attorney; and one to the plaintiffs, their attorney and the subrogee. The subrogee, again Farmers Insurance Co., claimed that it was entitled to the entire subrogated amounts without deductions for attorney fees. *Id.* at 657, 778 P.2d at 779.

The Court adhered to its "fund doctrine" analysis, but found for Farmers because neither plaintiffs nor their attorney had notified Farmers of the settlement negotiations prior to the settlement. *Id.* at 658–59, 778 P.2d at 780–81. This Court held that "[n]otice to an insurer is a necessary prerequisite in a case like this before the insured is entitled to charge the insurer for attorney fees for the recovery of the subrogated interest." *Id.* at 658, 778 P.2d at 780.

In the present case, Aherin claims that since Farmers was given notice of his intent to collect the subrogated amounts he should be able to recover from the fund. However, this reasoning does not appear to be in line with the Court's holding in *Miner*.

As discussed above, the Court in *Miner* held that notice must be given to the subrogee before attorney fees could be collected from the fund. Implicit in this holding is that the subrogee could make the decision not to employ the attorney for the collection of the subrogated amount. The notice requirement would be worthless, if after having

been notified, the subrogee could not refuse the services it is being notified of. Allowing the attorney to collect from the subrogee after the subrogee has clearly rejected the offer of service creates an unconscionable result.

Here, Farmers knew it did not require the services of an attorney to collect its subrogation claim. Farmers had many previous dealings with State Farm in which the subrogated amounts were reimbursed without the need for an attorney. Farmers had anticipated just such a situation when it entered into the inter-insurer arbitration agreement.

This also is not a situation where Farmers sat back and accepted a windfall. Farmers contacted State Farm on numerous occasions regarding its claim. It notified State Farm regarding the protection of the claim after the running of the statute of limitations, and was reassured that its claim was in no danger. On these facts, it is hard to imagine the equity of the fund doctrine in requiring Farmers to pay for legal services it neither wanted nor required.